## TOLFREE v. WETZLER et al.

Circuit Court of Appeals, Third Circuit.
April 4, 1928.

Rehearing Denied May 21, 1928.

No. 3595.

1. **Words and phrases—"Colloidal solution" is one which does not settle in fluid.**

A colloidal solution is one which does not settle in fluid, but remains in suspension.

2. **Patents ⟨key⟩328—1,281,690, claim 1, for method of stopping leaks, held valid and infringed.**

Stern patent, No. 1,281,690, claim 1, for a method of stopping leaks in automobile radiators and other receptacles, *held* valid and infringed.

Davis, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of New Jersey; William Clark, Judge.

Suit by E. R. Tolfree, as the "X" Laboratories, against S. G. Wetzler and others, as the Blue Seal Chemical Company. Decree of dismissal (22 F.[2d] 214), and plaintiff appeals. Reversed, with directions.

Stephen H. Philbin, and Henry R. Ashton, both of New York City, and Frederick P. Fish, of Boston, Mass., for appellant.

Harry B. Rook and Russell M. Everett, both of Newark, N. J., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This appeal from a decree dismissing the bill turns on the narrow question of whether patent No. 1,281,690, granted October 15, 1918, to Stern, for a method of stopping leaks in automobile radiators and other receptacles, involves invention. If it does, the defendant is an imitation infringer.

[1] Turning first to the disclosure of the patent, the specification states it is a method of stopping leaks in metal vessels, which "involves the employment of a leak-stopping ingredient which, with water, is adapted to form a colloidal solution." We pause here to say that a colloidal solution is one which does not settle in fluid, but remains in suspension. The patentee goes on to state:

"The essential constituent of the composition is a substance commercially known as cube gambier, which is an extract from certain trees or shrubs and contains catechin and tannin, although other bark extracts containing catechin or similar compounds may be employed or substances having similar characteristics. The composition may be produced in the following manner: the gambier

25 F.(2d)—35½

may be liquified by heat, and while hot may be added to a mixture of seven parts by weight of alcohol and one part by weight of water. This mixture may be placed in a closed vessel and agitated and heated for say 24 hours, and the temperature may be gradually increased until the contents reach about 350 degrees F., at which time a considerable pressure will be developed, then the temperature is reduced to about 35 degrees F., whereupon a colloidal solution is formed, which may be placed in cans for shipment; the gambier, which is the leak-stopping ingredient, being in a colloidal state."

Cans containing about a half pint of this solution are sold by plaintiff and defendant at $6 each, and small quantities thereof are poured in automobile radiators. When a leak occurs, the solution finds the leak and escapes through it, or, as stated in the specification:

"The colloidal solution of water and leak-stopping ingredients thus contained in the vessel will be circulated by any suitable means, such, for instance, as a pump associated therewith, so that the leak-stopping ingredients will be positively moved about and find lodgment at the leak opening, and when so disposed will in time be exposed to the air and become hard, and practically insoluble, and thus effectively close the opening."

[2] That this solution was useful is proved by the public buying from both plaintiff and defendant at high price for small quantities. The proofs show it was used by the United States on all long-distance aeroplane flights since the NC–4 trans-Atlantic flight in 1919, including the McMillan Arctic expedition of 1925. We shall not quote the evidence bearing thereon, but restrict ourselves to saying that the results in metal leak stopping by this fluid solution present a case of an unusual kind, and we are satisfied the contribution of this patentee to the art was one so effective, unlooked for, and simple as to brand it unusual in character. Moreover, the disclosure was original and novel. Gambier had been used for years in the tanning art and in other ways; its qualities were known. Indeed, in connection with pulverized asbestos, a Chilean tree, glucose, and claret wine, gambier was made part of a mixture in patent No. 1,117,526, to Seely, for "coating the interior of inflatable tires to render them puncture proof," an altogether different conception, employed for a different purpose and with different result. But no one before Stern conceived the idea of using gambier in suspension in water, where the solution

would remain fluid until a leak occurred. When this happened, for it was not a preventer of leaks, as was Seely's preparation, then the solution, in escaping, brought the suspended gambier into contact with the air, with the result that it hardened, automatically became a solid plug, and its hardness was so intensified by the action of the air that it was practically as impervious to perforation as the surrounding metal.

The prior art had used solids carried in fluids for plugs, and was based on the continuance of solids as solids at every stage. These solids plugged the holes, but unfortunately they also plugged the channels leading to them. In Stern's case what was eventually to become a solid was kept a liquid initially, and until functionally needed, and then, and then only, automatically became solid at a time and in a position where it blocked the path of its own escape by automatically soldering, so to speak, the leak. The use of gambier for such purpose, its continuing in suspension in water, its faculty of not clogging the channel, its solidifying when escaping through the leak, all matters elemental in this method and use of colloidal state, made a combination so unusual, unexpected, novel, and useful as to place it in the zone of invention. The disclosure was awarded claims which we shall not discuss in detail, and, referring to claim 1 only, which is quoted in the margin,[1] we are of opinion it covers the situation and method disclosed in the patent, and protects the colloidal gambier, the only leak-stopping element in that state here in issue, disclosed by the patentee and used by the defendant. The scope of the claims in the case of other elements is not before us, and therefore not decided.

The decree below is reversed, with direction to enter a decree sustaining the validity of the patent and ordering an accounting for infringement.

DAVIS, Circuit Judge (dissenting). The patent relates to a *method* of stopping leaks, principally in automobile radiators. The application was filed December 18, 1917. Olin, La Ballee, Hoag, and Johnson, for the purpose of stopping leaks in automobile radiators and cooling systems generally, used one or more of the following compositions: Oil meal, Venetian red pigment, oil of mirbane, ground flax seed, dextrine, sugar, flake asbestos, metal filings, oat meal, rice flour, graphite. The *method* employed by them was the same that Stern used in the patent under consideration. And so as a *method* or *process* there is absolutely nothing new in Stern's disclosure. Whether or not gambier as a composition is patentable is not before us. However, gambier as a composition formed the subject of an application for a patent by Stern on August 10, 1917. What became of that application is not disclosed in the record. The characteristics of gambier have long since been known. Seely, in his patent No. 1,117,526, said that gambier "hardens on exposure to air." It is just this property of gambier that led Stern to use it, by an old and well-known method, to stop leaks in automobile radiators and other metal vessels.

But it is contended that the Stern patent is valid as a "method" patent, because the old method contains a new composition, gambier, as a leak-stopping ingredient, which remains suspended in colloidal solution. The record, however, shows, as stated by Dr. Pond, the appellees' expert, that "flaxseed mixed with water will have certain of its constituents going into solution," and that "rice flour is very largely colloid; dextrine is colloid; oat meal is a mixture containing some colloidal material." Dr. Pond further said of oat meal: "The part that is soluble would unquestionably be colloidal, and the part that is insoluble would remain a suspended residue. It would be a colloidal solution in so far as the material dissolved. * * * I do not think it will give as nice a result, not so uniform; there would be a weakness in it, I suppose." He further said that, from the work he had done with gambier, he thought it was "superior" to oat meal.

The evidence, as a whole, amounts to this: Gambier used as a composition by an old method, well known in the prior art, to stop leaks in metal vessels, such as automobile radiators, is "superior" to other compositions used in the same way. Such use of gambier, in my opinion, does not constitute a valid *method* patent.

I think the decree of the District Court should be affirmed, and so I am constrained to dissent from the majority opinion of the court.

---

[1] The method of stopping leaks in metal vessels containing water, which consists in placing a composition comprising a leak-stopping ingredient in a colloidal state contained in the water in the vessel, and forming with said water a colloidal solution, and circulating said solution to move the leak-stopping particles and cause them to enter a leak opening, whereupon they harden upon the exposure to air.