FEATHERCOMBS, INC., Plaintiff-Appellee-Cross-Appellant,

v.

SOLO PRODUCTS CORPORATION, Defendant-Appellant-Cross-Appellee.

SOLO PRODUCTS CORPORATION, Plaintiff-Appellant,

v.

FEATHERCOMBS, INC., Defendant-Appellee.

No. 378, Docket 27534.

United States Court of Appeals
Second Circuit.

Argued June 12, 1962.

Decided July 13, 1962.

John B. Cuningham, Gerald W. Griffin, New York City (Cooper, Dunham, Dearborn & Henninger, Gerald W. Griffin and R. Bradlee Boal, New York City, of counsel), for Feathercombs, Inc.

Floyd H. Crews, New York City (Darby & Darby, Howard C. Miskin, New York City, of counsel), for Solo Products Corp.

Before FRIENDLY, KAUFMAN and HAYS, Circuit Judges.

KAUFMAN, Circuit Judge.

This case comes before us on cross-appeals from a judgment involving issues of patent validity, trademark infringement, and unfair competition. In the first of two consolidated actions brought in the District Court, Feathercombs, Inc. (hereafter referred to as Feathercombs), sued Solo Products Corporation (hereafter referred to as Solo), a competitor in the field of ladies' hair appliances, more particularly ladies' hair-retaining combs, for (a) infringement of its patent on a flexible, expandable comb, (b) infringement of its registered mark "Feathercombs," and (c) for unfair competition arising from the advertising and marketing of Solo's similar product, the Solo "Featherlight" comb. Solo counterclaimed for infringement of its own registered trademark "Featherlight," and in a second action sued Feathercombs for infringement of its patent on a flexible, hair-retaining comb—a patent which, concededly was procured before the Feathercombs patent considered in the first case. It was held in the court below that the patents owned by both parties were invalid because they had been anticipated by the prior art. But the court found that Solo was liable for trademark infringement and unfair competition; and, as a result, the "Featherlight" registration was cancelled, Solo was enjoined from continuing certain deceptive pack-

aging and display techniques, and Solo was also held liable for damages and profits which would be determined by a special master on an accounting.

## I.

As we have already noted, the parties before us are competitively engaged in the manufacture and marketing of comb-like devices for the retention of women's hair. These devices are capable of unusual pliability because of gripping metal or wire teeth which are joined one to the next rather than all to a rigid bar or wire top. Because of this, the combs may be used to retain the hair in any number of styles while remaining invisible to the eye. Although difficult to describe in words, the devices resemble a series of inverted hairpins connected to one another, the bottom of each pin being pinched together for insertion into the hair, and the top being an arch leading into the next identical member. The arch between each member creates a spring-tensioned connection, so that the entire "comb" may be expanded or contracted, and variously shaped.

Feathercombs lays claim to this device under a patent granted in 1954 to its president, Roy A. Smith. The court below held the Smith patent invalid because is was anticipated by earlier patented hair-retaining devices, especially the Sawyer patent (1928), the Coakley patent (England, 1936), and the Weeks patent (1951)—the Weeks patent being the one on which Solo relies in advancing its own claim for patent infringement. The Sawyer and Coakley patents, described fully in the opinion of the court below, resulted in devices which were somewhat hampered in flexibility because the teeth were inserted into or themselves shaped into a fairly rigid backing. However, we need not pass on the question whether the Sawyer and Coakley patents anticipated Feathercombs' (Smith) patent, because we agree with the court below that Solo's (Weeks) patent, which broke away from the rigid-backing comb, teaches a flexible device capable of relatively free expansion and shaping of the feminine coiffure. And the differences between the Feathercombs and the earlier Weeks patent are not so great that they would not "have been obvious at the time the invention was made to a person having ordinary skill" in the haircomb art. 35 U.S.C. § 103.

The court below also found that the Weeks patent, applied for in 1948, issued in 1951, and purchased by Solo in 1958 (after Feathercombs had commenced its action for patent infringement), was invalid for anticipation and lack of novelty. The comb referred to by the Weeks patent is made of plastic, or other flexible material, and consists of a series of serpentine portions, a device capable of relatively full expansion and contraction. Judge Metzner held that the Weeks patent taught little that could not be derived from the earlier Sawyer and Coakley patents. Here too, we need not make a determination for it is clear that the Weeks patent was anticipated by an even earlier patent issued in 1894 to one Nathan Rheinberg. The Rheinberg comb was formed of a wire bent in zigzag form so as to make a series of rows of teeth. Unlike the Sawyer and Coakley hair-retainers, it was without any spine and was obviously expandable; hence Weeks' innovations in the haircomb art lack the novelty requisite to patent.[1] We there-

---

1. Solo claims that the Rheinberg patent was not formally introduced in evidence and was not passed on by the court below; it therefore contends that Feathercombs cannot rely on that patent on its appeal. We think, however, that United States patents may be judicially noticed. It has always been clear that courts may take judicial notice of elements in the prior art which are of universal notoriety. Brown v. Piper, 91 U.S. 37, 43 (1875) ; Amdur, Patent Law and Practice 840–42 (1935). There has been some conflict in authority regarding notice of particular patents, but we approve the view adopted in Tolfree v. Wetzler, 22 F.2d 214, 216 (D.N.J.1927), rev'd on other grounds, 25 F.2d 553 (3d Cir.), cert. denied, 278 U.S. 628, 49 S.Ct. 28, 73 L.Ed. 547 (1928), that such notice is proper in the discretion of the court. The Tolfree opinion noted the contrary authority, but chose to adopt a more

fore affirm the judgment of the lower court in finding both the Smith and Weeks patents invalid.

## II.

Solo has long been known as a manufacturer of various hair accessories for women, such as combs, curlers and hairnets. In advertising and marketing its products Solo often inserted a short descriptive or suggestive word between its trademark "Solo" and the noun identifying the product. "Solo Grip-Tite-Tuck Combs," "Solo Sleep Easy Curlers," and "Solo Comfy Curlers" are examples. These terse and contrived adjectives were not used in any trademark sense, but were merely words descriptive of the particular qualities of the hair product. From 1938 to 1957, Solo used the term "Featherlight" in conjunction with its hair roller. The court below found, and properly so, that this word too was merely used to describe the qualities of Solo's hair roller, and was not used in a trademark sense. That is, the word "Featherlight" was not meant to convey to the public the fact that the product was manufactured by a particular company and was not indicative of source. A mere examination of Solo's advertising in the period between 1938 and 1957 bolsters this conclusion, for the words "Solo" in block letters was given great prominence in the display of the hair roller, while the word "Featherlight" was depicted in much smaller block lettering.

Feathercombs came upon the scene in 1953, when it began to merchandise its expandable hair retaining comb under the trademark "Feathercombs" appearing in black script on white display cards. This mark was granted registration in the principal register for distinctive marks on January 1, 1957. From the date of its entry upon the market, Feathercombs' expandable comb, as well as its trademark, were given wide publicity in unsolicited articles and editorials in newspapers and in popular and fashion magazines. In 1957, more than four years after Feathercombs first met with success in the hair-retaining art, Solo marketed an almost identical comb, denoting it the "Featherlight Comb." The word "Solo" which was generally prefixed to the name of that company's hair products, was conspicuously absent from its usual position in the display material presenting the comb to the public. The words "Featherlight Combs" appeared at the top of the card upon which the comb was affixed, and the word "Solo" appeared in an oval at the bottom corner of the card. Also absent from the card was Solo's familiar red and yellow background; like Feathercombs' display card, Solo's was white. In 1958, Solo applied for but was denied registration in the principal register for the term "Featherlight." The word was subsequently (March 10, 1959) granted registration in the supplemental register, which is reserved for marks that are merely descriptive. The registration of "Featherlight" was granted for "Hair Rollers and Combs."

Solo admits [2] that the terms "Feathercombs" and "Featherlight" are likely to cause confusion among ordinary purchasers of the parties' hair appliances. The court below found that such confusion was *in fact* created because of the similarity of trademarks, marketing practices and the advertising and display materials. We are therefore confronted with the problem of which, if either, of the parties before the court is entitled to the free use

liberal rule. We are likewise persuaded by the analogy of patent records to ordinary reports of other executive departments, which are clearly subject to judicial notice. See Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162 (1918). Judicial notice of the Rheinberg patent is made yet more appropriate by the fact that it presents evidence mere-

ly cumulative to that adduced and made the basis of the court's judgment below. Moreover, Solo itself, proponent of the Weeks patent, notes the Rheinberg patent in its answer as a defense to Feathercombs' action for patent infringement.

2. Paragraph 16 of its Answer.

of its trademark and to an injunction against the infringing trademark use of the other.

We agree with the court below that Solo has infringed the trademark "Feathercombs" by its post-1957 use of the word "Featherlight" in merchandising its expandable comb. Solo contends that its use of the word "Featherlight" before 1953, when Feathercombs first marketed its comb, was not merely descriptive but was a valid trademark which indicated the source of the product. It is elementary that in order to acquire a right to the exclusive use of a mark, it must be such as to identify the origin of a product or service and to distinguish one product or service from another. Vandenburgh, Trademark Law and Procedure 1 (1959). In contending that the word "Featherlight" did (before 1953) connote the source of the hair product on which it was used, Solo refers to Charles of the Ritz, Inc. v. Elizabeth Arden Sales Corp., 161 F.2d 234, (34 C.C.P.A. 1029, 1947) where the registered mark "Feather-Light" was held to be a valid trademark for face cream, and the court refused to cancel it as "merely descriptive." The case fails to support Solo's contention. It highlights the essential distinction that must be made between marks that are suggestive and those that are "merely descriptive." The former are good trademarks. Vandenburgh, op. cit. supra, § 4.30, at 69. In Charles of the Ritz, the word "Feather-Light" was held to be "highly suggestive" as to the qualities of the plaintiff's face cream; it was not deemed to be "merely descriptive" of the weight or appearance of the plaintiff's product. In the present case, however, the court below concluded, and with ample support in the evidence, that the word "Featherlight," as applied to hair rollers, merely described a quality of the metallic basic appliance, a quality that would make it desirable to the consumer.

More in point is the case of In re Federal Cement Tile Co., 58 F.2d 457, 19 CCPA 1205, 1932. There the court affirmed the decision of the Commissioner of Patents in refusing registration of the word "Featherweight" as a trademark for use on concrete roof slabs. The court found the marks merely descriptive of the character and quality of the goods. "[W]e can conceive of no impression which an observer would derive from seeing the word on such article except the impression that, comparatively speaking, the article was of very light weight." Id.

Since the pre-1953 use of the word "Featherlight" was merely descriptive and did not develop that secondary meaning indicative of source which would be necessary to grant it judicial protection as a valid trademark, use of the word "Feathercombs" was not an infringement of Solo's mark. On the other hand the court below properly held that the word "Feathercombs" did constitute a valid trademark. "Feathercombs," as the trial court found, is not merely descriptive, but "has become widely known by the purchasing public and associated by it with Feathercombs, Inc. to indicate Feathercombs, Inc., as the source of hair-retaining devices in connection with which it is used." This finding is amply supported by the evidence of widespread publicity given to Feathercombs' hair-retainer when first brought to the attention of the public in 1953. Although a valid trademark must serve as an indication of origin, we are not to be construed as saying that it is necessary that purchasers actually know the name of the manufacturer of the goods they purchase. "It suffices that the public normally assumes that articles bearing the same mark are from the same source." 3 Callmann, Unfair Competition and Trade-Marks, § 84.1, at 1628 (2 ed. 1950). See Tas-T-Nut Co. v. Variety Nut & Date Co., 245 F.2d 3, 7 (6th Cir. 1957).

Despite the concession of both parties that the two marks here in question are likely to be misleading and confusing, Solo contends that it is not liable for the infringement of the mark "Feathercombs." It contends that although the mark may have been valid and exclusive at first, it became "generic" by Feathercombs' use of the word as a noun de-

noting the expandable comb itself and therefore lost any claim to protection. There is no evidence which would require us to overturn the lower court's finding that "Feathercombs" remained a valid trademark, indicative of origin. When a mark loses this function, and merely gives information as to the nature or class of an article, the holder of the mark suffers a total loss of rights in it. The mark then becomes non-distinctive, loses its secondary meaning, and becomes generic. See Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Community of Roquefort v. William Faehndrich, Inc., 2d Cir., 303 F.2d 494; Bayer Co., Inc. v. United Drug Co., 272 F. 505 (S.D.N.Y. 1921) (L. Hand, J.). A mark is not generic merely because it has *some* significance to the public as an indication of the nature or class of an article. If that were so, then Feathercombs' frequent reference to its product as "the Feathercomb" might well have caused it to lose exclusive right to the work. In order to become generic the *principal* significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin. See Community of Roquefort v. William Faehndrich, Inc., supra; Coca-Cola Co. v. Koke Co. of America, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189 (1920); Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U.S. 537, 547, 11 S.Ct. 396, 34 L.Ed. 997 (1891); Vandenburgh, op. cit. supra, § 9.20. There is no convincing evidence that the word "Feathercombs" *primarily* had this connotation. Therefore, Solo was not free to treat its competitor's mark as generic and to disregard its exclusive claim to that mark.

 Solo also contends that its use of the word "Featherlight" after 1957 must be deemed merely descriptive in accordance with the lower court's finding with respect to its earlier use of that word on hair rollers. Solo argues that it is not liable for infringement because a descriptive term cannot infringe a trademark. The court below recognized that "a purely descriptive term used descriptively cannot infringe a valid trademark," 196 F.Supp. 305; see 15 U.S.C.A. § 1115(b) (4); but went on to hold that after 1957 Solo used the word "Featherlight" as a trademark and not merely to describe its product. No doubt an ordinarily descriptive word may, in the context of certain circumstances, take on nondescriptive or distinctive attributes and become capable of indicating source. Thus, "a word descriptive when used in connection with one line of goods may be fanciful or suggestive in other contexts." 3 Callmann, op. cit. supra, § 71.1(e) at 1083. "Featherlight" as applied to cosmetic creams is an example. So too, a descriptive word may have no relevance to any feature or characteristic of the goods in question. See Stork Restaurant, Inc. v. Sahati, 166 F.2d 348, 355 (9th Cir. 1948). Solo's post-1957 use of "Featherlight" did not become non-descriptive for these reasons. But the word did take on trademark characteristics because of Solo's clear attempts to give it a conspicuous position in its marketing and display techniques, without giving prominence to the mark "Solo," as it did with other of its hair appliances, more specifically its "hair rollers," its "Pony Tail Round Comb," its "Tuck Comb" and its "Bar Barrette." That Solo had intended to use the term "Featherlight" in a trademark sense is further suggested by its application in 1958 for registration in the principal register. "If a competitor of a trade-mark owner seeks registration of the mark, that would be conclusive evidence of his intent to make a trade-mark use thereof." 3 Callmann, op. cit. supra, § 85.1(a), at 1670. For these reasons Solo cannot now justify its trademark use by contending that the term is merely descriptive.[3] Consequently, Solo has no valid defense to the claim for trademark

3. It is not necessary to decide whether a term used even descriptively can infringe, if purposely used in a deceptive manner or in bad faith. See 3 Callmann, op. cit. supra, § 85.1(b).

infringement. The parties stipulated that "Feathercombs" and "Featherlight" are likely to lead to confusion and the court below found that confusion in fact existed. Therefore, Judge Metzner properly issued an injunction against the use of the designations "Featherlight Combs" or "Featherlight" or any other designation confusingly similar to the mark "Feathercombs." And he was also right in ordering the cancellation of the registration of "Featherlight" in the supplemental register. See 15 U.S.C.A. § 1119. Registration in the supplemental register which is reserved for nondistinctive marks, entitles the owner of a mark to institute actions based upon it in the federal courts, see 15 U.S.C.A. § 1121, and to obtain the remedies provided in the Lanham Act, 15 U.S.C.A. §§ 1114–1122. But registration cannot give validity to a mark, the use of which would be invalid at common law. Section 23 of the Lanham Act, 15 U.S.C.A. § 1091, prohibits the registration in the supplemental register of any word which "resembles a mark registered in the Patent Office * * * or [which is] likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers * * *." See 15 U.S.C.A. § 1052(d). The cancellation will not interfere with the lawful and purely *descriptive* use of the words "feather light" in the advertising and display of Solo's products, and will therefore not unduly hamper Solo in the marketing of its line of hair appliances.

### III.

■ Feathercombs' claim for trademark infringement leads naturally into its broader claim of unfair competition. The court below found that Solo had made a deceptive use not only of the term "Featherlight" but also of its packaging and display materials. Before Solo began to market its expandable hair comb, Feathercombs had presented its own comb to the public by affixing it to a rectangular white card bearing, in black script, the word "Feathercombs." Cards of various sizes were gathered in a box

to be placed on the display counter and attached to the box was a fairly large display card with photographs depicting the usually attractive women using the comb to shape various hair styles. At the base of the series of photographs, just above the tray containing the combs, or interspersed between rows of photographs, was found a legend such as, "Style your own hair just the way you want * * * securely * * * with Fabulous, invisible Feathercombs." In 1957, four years after Feathercombs had begun to present its product to the public in this format, Solo adopted an almost identical white backing card of various sizes, beneath a display card containing photographs of attractive ladies using the expandable comb and a somewhat similar legend. We agree with the lower court that the confusion in trade dress combined with the infringement of the trademark, was sufficient to create considerable confusion in the eyes of the average purchasing customer.

■ The Feathercombs' patent being invalid, it is clear that Solo had every right to market a comb similar or identical to that marketed by its competitor. But it is also clear that the law placed upon Solo an obligation to advertise, display, and promote its product so as not to be unduly confusing to the average consumer. See Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614, 619 (2 Cir.1962). The fact that Solo abandoned its familiar red and yellow display background, dropped the trade name "Solo" from its place of usual prominence and adopted a format almost identical with Feathercombs' when it was clear that the products would be displayed near each other on merchandising counters and would attract the same group of females, is ample evidence of its intention to tread upon the good will of Feathercombs.

> "It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and coverings which by no possibility can cause confusion between his

goods and those of [his] competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them." Florence Mfg. Co. v. J. C. Dowd & Co., 178 F. 73, 75 (2 Cir. 1910).

"In this circuit and others, numerous decisions have recognized that the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer." Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755, 758 (2 Cir.1960). We note that Feathercombs, aside from its ownership of a valid trademark, has no monopoly upon any one of the improvements of its packaging and display devices. But, in determining whether there is likelihood of confusion, we must examine all of the components taken as a whole.

■ Solo contends, however, that Feathercombs' display did not acquire any secondary meaning and that the finding of unfair competition should be set aside. The reply to this is that there is no need for the display combination to acquire an extraordinary meaning; it need merely be distinctive enough to become recognized as "a public guaranty of origin and quality." Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 119 F.2d 316, 322 (6 Cir.1941), rev'd on other grounds, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942); 3 Callmann, op. cit. supra, § 82.1(h) at 1469. The finding of the court below that there was *actual* consumer confusion reinforces the conclusion that the Feathercombs mark and display material was in fact significant to the purchasing public.

■ We believe, however, that in framing his decree, Judge Metzner failed to delineate between that form of competition which is fair and that which is not. He was correct in ordering Solo to deliver up for destruction all "sales and advertising literature including packaging and display material having imprinted there-on the designation Featherlight or Featherlight Combs" or in the alternative to have these materials overprinted to delete all references to those words as an attempted trademark designation for Solo's hair appliances. Such an injunction follows clearly from the holding of trademark infringemnet. But the court went on to order the destruction of all display material in Solo's control, which includes photographs of women using the flexible comb to shape various hair styles and any hortatory legend similar to that employed by Feathercombs. We believe that although the use of such material by Solo was an indication of its intention to engage in unfair competition, Feathercombs' grievance could be remedied by an injunctive provision which is less drastic and which would not deprive Solo of the right to legitimately market its own hair appliance. Since Solo infringes no patent by manufacturing its expandable comb, it is essential that it not be unduly curtailed from marketing it by being denied the usual promotional accoutrements of the modern market place. Solo must be permitted to call to the public's attention the novel uses of the expandable comb, and this can hardly be done without the use of careful hand drawings or photographs of women using the article itself. So too, Solo must be permitted to use the ordinary "puffing" language customary in the promotion of a product. The similarity of photographs and legend between Feathercombs' and Solo's display may well be necessary because of the similarity in their products. To give Feathercombs a monopoly of these display techniques would be in effect to give it a monopoly over the sale of a product not gained by its spurious patent.

"If petitioner had been content to manufacture the preparation and let it make its own way in the field of open and fair competition, there would be nothing more to be said. It was not thus content, however, but availed itself of unfair means, either expressly or tacitly, to impose its preparation on the ultimate purchaser as and for the product of re-

spondent. Nevertheless, the right to which respondent is entitled is that of being protected against unfair competition, not of having the aid of a decree to create or support, or assist in creating or supporting, a monopoly of the sale of a preparation which everyone, including petitioner, is free to make and vend." Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 532, 44 S.Ct. 615, 618, 68 L.Ed. 1161 (1924); see American Chicle Co. v. Topps Chewing Gum, Inc., 210 F.2d 680 (2 Cir.1954).

Thus, paragraph 9 of the judgment below should be stricken. Feathercombs' display will be amply protected by paragraph 7B, which prohibits generally Solo's use of "display material deceptively similar to" that of Feathercombs.

Finally, Solo argues that the lower court erred in submitting the issue of damages and profits to a master, contending that there was no evidence of actual confusion caused by trademark infringement and unfair competition, but at best only a likelihood of confusion. We do not agree. The lower court found actual confusion and there is ample support for the finding in the record. Therefore, we need not address ourselves to the problem of damages for mere likelihood of confusion.

The judgment below, as modified in accordance with this opinion as it relates to Solo's acts of unfair competition, is affirmed.