**MABS, INC., d/b/a Lancer of California, Snap-Tab Corporation and Leslie Riverview Realty Corp., Plaintiffs,**

v.

**PIEDMONT SHIRT COMPANY, Defendant.**

**Civ. A. No. 4246.**

United States District Court
D. South Carolina,
Greenville Division.

Dec. 9, 1965.

Cushman, Darby & Cushman, by George T. Mobille, Washington, D. C., Ralph Bailey, Jr., Greenville, S. C., for plaintiffs.

Amster & Rothstein, by Morton Amster, Myron Amer, New York City, Price & Poag, by J. D. Poag, Greenville, S. C., for defendant.

SIMONS, District Judge.

This is an action alleging patent and trademark infringement of a "snap-tab" shirt collar and for unfair competition based upon the sale by defendant of shirts having such collars. The subject patent relates to a shirt collar having "inelastic tabs" attached to the underside of the collar wings by aid of top stitching; or such tabs "sandwiched" in between the top and bottom plies of the collar wings attached by the aid of top stitching; the tabs themselves have a male and female snap fastener on their respective free ends, which connect the tab ends to hold the collar wings in place while the tabs are maintained free of any engagement with the body of the shirt.

The action was originally brought by Mabs, Inc., d/b/a Lancer of California, against Piedmont Shirt Company for patent infringement of United States Patent No. 2,905,945, issued September 29, 1959; for trademark infringement of the trademark SNAP TAB, Trademark Registration No. 709,660; and for unfair competition based upon the sale by defendant of shirts having snap-tab collars.

In its answer to plaintiff's complaint, defendant Piedmont Shirt Company entered a general denial, and asserted three affirmative defenses and a counterclaim as follows: [1] That the patent in suit is invalid, void and without effect in law; [2] That Trademark Registration No. 709,660 for the alleged mark SNAP-TAB is invalid, void and of no effect in law because the words "snap-tab" are descriptive of the goods to which they are applied and incapable of indicating a source of origin of the goods; and [3] That defendant's goods are clearly and positively marked with its own trademarks and are associated in the minds of purchasers with the defendant only. Defendant's counterclaim seeking a declaratory judgment for patent invalidity and non-infringement alleges that plaintiff claims to be the owner of the patent in suit, that defendant has been charged with patent infringement, that the patent is invalid and is not infringed by defendant, and that an actual controversy exists between plaintiff and defendant as to the validity and infringement of the patent.

The answer demands that the complaint be dismissed, that the patent in suit be declared invalid; that it be determined that defendant has not infringed plaintiff's trademark; that it be declared that the words "snap-tab" are generic as applied to shirts; that plaintiff's Registration No. 709,660 be cancelled, and that costs and a reasonable attorney's fee be awarded to defendant.

Mabs, Inc., replied to defendant's counterclaim by generally denying the allegations thereof.

Defendant moved under Rule 56 for summary judgment for failure of plaintiff, Mabs, Inc., to have standing to sue herein; and Mabs, Inc., made a cross motion under Rule 21 to add further parties-plaintiff. By order of this court dated October 9, 1964, defendant's motion

for summary judgment was denied, and Snap-Tab Corporation and Leslie Riverview Realty Corp. were added as parties-plaintiff.

Plaintiff, Mabs, Inc., d/b/a Lancer of California, is a corporation duly organized and existing under the laws of the State of California, with an office and place of business at 425 East Pico Boulevard, Los Angeles, California.

Defendant, Piedmont Shirt Company, is a corporation duly organized and existing under the laws of the State of South Carolina, with an office and place of business in Greenville, South Carolina.

Plaintiff Mabs, Inc., is and has been since September 29, 1959 the owner of the legal title to United States Patent No. 2,905,945 entitled "Collar Construction For Shirts," the patent in suit herein.

By an instrument dated June 7, 1960 plaintiff Mabs, Inc., transferred all rights to make, use and sell the collar constructions for shirts under said patent to plaintiff Snap-Tab Corporation, a corporation organized and existing under the laws of the State of New York. Plaintiff, Leslie Riverview Realty Corp., owns a one-half interest in plaintiff, Snap-Tab Corporation.

Snap-Tab Corporation and Leslie Riverview Realty Corp., have filed voluntary appearances and thereby consented to the jurisdiction of this Court.

This action arises under the Patent Laws of the United States of America pursuant to 28 U.S.C. § 1338[a]; and this Court has jurisdiction of the subject matter and of the parties to this action. There is an actual controversy between the parties within the meaning of 28 U.S.C. § 2201.

The case was tried in Greenville, South Carolina, at a special term of court January 25 to 29, 1965. At the close of plaintiff's case defendant made motion to dismiss unfair competition count on grounds that plaintiffs had failed to show that any of defendant's goods had been improperly labeled to confuse consumers by means of the use of the term "snap-tab". There being no evidence to support plaintiffs' allegations on this count, the motion was granted. The remaining issues to be determined, therefore, are: [1] The validity of patent in suit; [2] Infringement of patent by defendant; [3] Validity of plaintiffs' trademark "Snap-Tab"; [4] Infringement of the trademark "Snap-Tab" by defendant; and [5] Award of attorneys' fees to prevailing party.

I. *Validity of Patent*

a. History of Patent:

Patentee of the patent in suit filed original application for a patent August 11, 1958, which included five claims. Claim 1 read as follows:

"1. In a shirt having an attached collar, said collar being attached to the neckband and having a folded-over front portion providing spaced wings at the front of the collar, said shirt also having detachable fastening means for attaching the ends of the neckband together; tab means extending between the wings and having ends hidden by the wings; and detachable fastening means for holding the tab in place, and independent of the neckband."

All of the claims were rejected as lacking invention over prior art.[1]

Patentee argued that his invention differed from prior art in that:

"The present invention as defined in claims 1–4 provides a tab means cooperating with the collar *wings* to hold the *wings* in place. Not one of the cited references is even concerned with the problem. All the art cited by the Examiner relates to *neckband* fasteners *only*. The tabs of the prior art are attached to the ends of the neckband to close the *neckband* of the collar in place of a collar button. While the present invention as claimed provides tab means attached to the collar *wings* for holding the *wings* in place."

---

1. Prior art is discussed hereinafter.

Patentee then on December 17, 1958 amended his application in minor particulars and asked for reconsideration. However, the patent application, as amended was again rejected on January 6, 1959 as being unpatentable over prior art known in the field.

Following the second rejection patentee filed another amendment dated May 21, 1959 cancelling all prior claims and substituting therefor a new claim 6 which read as follows:

"6. In a collar structure for permanent attachment to the neck portion of a shirt, said structure having an inner neckband portion permanently carried by the shirt, and an outer top turn-down portion overlying the neckband portion, said structure having means carried by the neckband portion, for fastening the ends of the neckband portion together, the front edges of the top portion being spaced apart to form wings between which a necktie may be accommodated: a pair of tabs, each made of substantially inelastic material, and each having an end permanently attached to the top portion beneath the wings and close to the respective front edge of the top portion, said tabs having free ends extending toward each other between the wings, said ends overlapping at the front of the collar; and cooperating male and female detachable snap fasteners respectively carried by the overlapping ends, and cooperating to attach the said overlapping ends together, the overlying end being wide enough completely to conceal both of the said snap fasteners."

Patentee's amended application was finally rejected by the Patent Office November 13, 1959, with the Examiner stating in part that:

"Claim 6 is rejected as being unpatentable over either Stekl, of record, or Tooke, of record, in view of Goldschmidt, of record. To provide either Stekl or Tooke with the snap-fastener fastening means of Goldschmidt, in lieu of the respective fastening means therein is deemed a mere mechanical expedient, producing no new and unobvious results, and therefore unpatentable. Applicant will note that Goldschmidt teaches the expedient of providing a collar attachment with concealed snapfasteners. Applicant's remarks have been considered; however, applicant will note that Tooke teaches permanent attachment of a strap to a collar [page 2, line 16] and Stekl's stitching [at 4 and 5, Fig. 2] is considered to be permanent attachment. As regards the permanency of the attachment of the collar of Stekl or Tooke to the shirt it is to be noted that attachment of any two garments by suitable fastening means is permanent, inasmuch as the said garments can be maintained in this fastened condition indefinitely. The argument concerning Tooke's attachment is not persuasive since a slightly elastic material could perform the required function."

The application as rejected was abandoned by patentee and assignee, Mabs, Inc., December 28, 1959, after the issuance of the patent in suit.

The patent in suit resulted from application filed April 29, 1959, prior to final rejection of the original application by the Patent Office. This second application was a continuation in part of the earlier application which was rejected. It contained initially six claims which were all rejected June 23, 1959 as lacking invention over prior art or for failure to comply with patent laws. The application was amended July 20, 1959 to substitute a new claim 7 and to cancel claims 1–6, which new claim, as amended, read as follows:

"7. In a shirt having an attached tab collar which has an inner fold and an outer fold, said outer fold forming a turn-down portion made from at least two plies and having top stitching paralleling the edge and ends thereof, the said ends being spaced at the front of the shirt to define a necktie receiving space;

the combination therewith of a pair of tabs for detachably connecting the said ends of the outer fold, said tabs each having an end connected to an end of the outer fold and having free ends extending to the front center of the collar across the necktie receiving space; each of said tabs being made from inelastic material and being attached to the corresponding end of the outer fold by the aid of the top stitching and a snap fastener having male and female portions respectively carried by the free ends of the said tabs."

It appears that the only material difference between claim 7 of the second amended application and claim 6 of the first amended application, which was rejected and abandoned, is that claim 7 of the second amended application recites that each of the inelastic tabs is "attached to the corresponding end of the outer fold [front edge of the collar] by the aid of the top stitching."

The following remarks were made by counsel for patentee in connection with the amendment of July 20, 1959:

"Pursuant to conclusions arrived at with the Primary Examiner, claims 1–6 have been cancelled without prejudice and new claim 7 substituted therefor. This new claim is designed to more specifically set forth the features of the collar construction comprising the invention. The advantages achieved by these features over the art cited in the parent application, are fully noted in applicant's Preliminary Amendment of June 23, 1959. These advantages are believed to be equally applicable to the references cited in the Official Action of June 23, 1959, to which the present amendment is responsive. Neither Pederson, Tooke [a reference in the parent case], nor Schworm shows a collar construction including an outer fold formed of at least two plies and including snap tabs attached to the said outer fold by top stitching at the ends thereof. This particular construc-

tion results in a necktie receiving space of enhanced utility from four standpoints, to wit, [a] the necktie receiving space presents the necktie in a most attractive manner, since the ends of the outer fold are neatly gathered closely adjacent the necktie; [b] by attaching the tabs to the ends of the outer fold at the top stitching, a neater appearing collar is obtained after laundering and pressing due to the absence of impressions; [c] by using top stitching to attach the tabs to the ends of the outer fold a single step operation is obtained during the manufacture of the shirt, i. e., both the top stitching and the tab are applied in one operation significantly decreasing the cost of production; and [d] the use of a snap fastener in this particular construction makes for far easier attachment of the collar assembly after securing the necktie in the collar."

Issuance of Letters Patent on patentee's second amended application was granted September 29, 1959.

It must be noted at this time that patentee's specifications and drawings as contained in his second amended application do not indicate that the tabs in the patent are connected with the folds of the shirt collar by any means other than top stitching; that is to say, the patent does not show that the tabs are attached to the folds of the collar by run stitching as well as top stitching.

It has been long known in the manufacture of shirts to construct what is known in the art as a "stitch and turn" collar. In the manufacture of the "stitch and turn" collar, four layers of fabric are usually superimposed one upon the other. The multiple plies or layers of fabric are initially cut to the shape of the collar and are stitched along three sides corresponding to the front edges of the collar which frame the necktie receiving space of the shirt and the lower edge of the collar which is not attached to the body of the shirt. This initial stitching is referred to as "run stitching". After

completing the run stitching of the collar, the layers of fabric are turned inside out so as to bring two of the plies or layers of fabric into position to serve as the top ply and underply of the collar. The other two layers serve as the innerlining of the collar. The turning of the collar hides the raw edges of the fabric and the run stitching. After turning the collar it has long been customary in the practice to apply a decorative or top stitching to the collar which is visible on the outside of the collar. The top stitching is parallel to the front and lower edges of the collar. The completed collar is then attached to the neckband of the shirt by stitching the upper edge of the collar to the neckband. These are well known and conventional stitching techniques used in the manufacture of shirt collars.

Plaintiff argues, however, that claim 7 of the amended patent application expressly avoided the recitation that the tabs were secured to the collar folds *solely* by the means of top stitching, and further that it is notoriously known in the art that run stitching is a mandatory requirement in the production of collars; and that it constitutes an infringement of the patent whether defendant secured its tabs to the collar by means of top stitching alone, or in conjunction with run stitching, so long as the combination of top stitching and snap tabs were used by defendant in the manufacture of its shirt collars.

In view of the entire history of the patent proceedings, it is my opinion that patentee certainly urged upon the Patent Office the advantages of the sole use of top stitching to attach the snap tabs to its shirt collars, and that the patentee's representations and arguments in this regard were intended to mean at that time that the use of top stitching as the sole means to attach the tabs was an important and different technique in production methods. The drawings and specifications embodied in the patent history support this conclusion. However, as will be readily apparent, the court does not consider this issue to be the determining factor in deciding the validity of the patent in question.

b.   Prior Art

In considering prior art in the field of construction of shirt collars, the patents considered and cited by the Patent Office, and the evidence and testimony presented at the trial conclusively show that it is notoriously old in the shirt making art to employ both top stitching and run stitching in the manufacture of shirt collars. It is likewise notoriously old in the art to use tabs, attached to the collar, to hold the collar wings in place, and to use snap fasteners as substitutes for buttons and buttonholes on men's apparel, including shirts.

Claim 6 of patentee's original application was rejected as being unpatentable over Stekl, or Tooke in view of patent of Goldschmidt.

The Tooke patent, U. S. Patent No. 1,243,011, discloses a shirt collar having a neckband and a collar terminating in two wings having spaced front edges for accommodating a necktie therebetween, a tab having one end fastened and concealed beneath one collar wing, another tab having one end fastened and concealed beneath the other collar wing and detachable fastening means [in the form of button and buttonhole] for securing the tabs to each other independently of the neckband of the shirt collar. The tabs in the Tooke patent are described as being of elastic material and "are connected to the lining of the ends of the collar top either by stitching, or hooks and eyes   *   *   *"

The patent to Goldschmidt, U. S. Patent No. 2,086,907, discloses an extensible fastening device for a shirt collar which includes a snap-fastener having a male member on one end of the neckband and a female member on the other end of the neckband for detachable engagement, as is usual with such snap fasteners or grippers.

Likewise claims 1–5 of patentee's second application were initially rejected by the patent office as lacking invention "over Pederson in view of Tooke". Ped-

erson, or more correctly the Norwegian patent to Horn, specifically shows the use of snap fasteners on a pair of tabs connected to a shirt collar.[2]

During the trial defendant introduced into evidence Tripler and Hathaway shirts as exemplifying the prior use of top stitching to secure tabs to a stitch and turn collar.

The Tripler and Hathaway shirts have been sold in the United States for a number of years; the Tripler shirt from about 1953, and the Hathaway shirt from about 1936. Both these shirts embody a stitch and turn collar, having a pair of tabs made from inelastic material, attached to the folds of the collar at one end by means of top stitching. The tabs have free ends which extend to the front center of the collar across the necktie-receiving space. The free ends contain buttonholes which attach to a collar button located on the body of the shirt. The only difference between the claimed invention of the patent and the Tripler and Hathaway shirts is the use of snap fasteners on the ends of the tabs of the patent in suit which permits the tabs to be free of the body of the shirt. The Tripler and Hathaway shirts were not before the Patent Office and were not considered during the prosecution of either application for patent. However, some of the elements embodied in these two shirts, if not all of them, were considered in connection with other patents cited during the patent proceedings.

The prior art discloses that all of the single elements contained in the alleged invention were notoriously old in the shirt making industry. There is nothing in the record of the patent proceedings, or brought out at the trial, to explain why the Patent Office ultimately found claim 7 of patentee's second application to be valid after rejecting all prior similar claims for lacking invention in view of the prior art notoriously old in the shirt making industry.

### c. Events Subsequent To Issuance Of Patent

A licensing program involving up to 55 licensees have paid royalties of about a quarter million dollars on over 15,000,-000 of the patented collars. However, the acknowledged leaders in the shirt industry including Arrow, Manhattan and Excello have not accepted licenses under the patent. Phillips Van Heusen did take a license for a nominal consideration. Arrow has enjoyed the popularity of snap tab collars, differing from the subject patent in construction only by joining the tabs to the underside of the collar by heat sealing, without the aid of top stitching. Manhattan and Excello also manufacture snap tab collars having the tabs secured to the collars by run stitching. C. F. Hathaway Company is now marketing a snap tab collar and has merely substituted snaps for the button and buttonhole of its aforementioned top-stitched tab collar shirt. This company refused to become a licensee of plaintiffs, and no infringement action has been commenced against it.

Defendant Piedmont entered into a licensing agreement with plaintiff, Mabs, Inc., on or about May 2, 1960 which was terminated by Piedmont effective August 31, 1961 pursuant to Article III. [a] 3 of that agreement. Thereafter Piedmont was in no way precluded from contesting the validity of said patent. Prior to the consummation of said patent license agreement, plaintiff, Mabs, Inc., represented to defendant Piedmont that said patent would be licensed to all companies in the shirt industry on the same terms and conditions, and that said patent would be uniformly enforced against said industry. Said patent license agreement contained a so-called "most favored nations" clause [Article IV(a)]. Notwithstanding such representations, during the term of said patent license agreement plaintiffs entered into agreements with other companies on more favorable terms

---

**2.** Although plaintiff disputes this fact, the illustration of the Horn patent. [Def. Ex. M. Tab L] and the language of the patent examiner in rejecting claims 1-5 of the second application, convinces the court that the Horn patent embodied snap fasteners on the ends of the collar tabs.

and did not advise Piedmont of that fact or make such more favorable terms available to Piedmont. Additionally, although a lawsuit was commenced against The Manhattan Shirt Company charging infringement of said patent an agreement was entered into in that lawsuit between counsel, which agreement was known to and approved by the managing agent of Snap-Tab Corporation, granting The Manhattan Shirt Company an immunity from suit and a royalty free license under said patent, notwithstanding the fact that the snap-tab collar being manufactured by The Manhattan Shirt Company is substantially identical to that being manufactured by Piedmont.

d. Summary

It is apparent from the foregoing findings of fact, and plaintiffs so admitted at time of trial,[3] that its patent rights are based upon the novel functions of the combination of certain elements well known to the shirt making industry. These elements are: [1] Inelastic tabs; [2] Snap fasteners, and [3] Top stitching on shirt collars. It is admitted by plaintiffs, and conclusively proved by cited prior art, that these elements, singly, have been known for years to those skilled in the art of shirt collar construction. The claimed invention rests allegedly in the novel functions and co-action of these elements in combination, which functions provide greater comfort to the wearer of the shirt; more ease with which the collar is assembled around the necktie when the shirt is worn; neater appearance of the assembled collar about the necktie when the shirt is worn; the fact that the collar is self-contained requiring no pin, bar or collar stud; maintenance of acceptable collar appearance after repeated laundering and pressing; and a reduction of time and motion in the cutting, assembling and stitching operations that are required in manufacture. The new functions allegedly produced by the combination of the said elements are claimed by patentee to include the following: The maintenance of the snap ends of the tabs free of any engagement with the shirt proper when the collar is worn, thus minimizing stresses exerted on the tabs; the use of top stitching as an aid in attaching the inelastic tabs to the collar wings, thereby distributing the minimized stresses to the collar plies adjacent to the collar wing edges; and the use of snap fasteners to attach the tabs to each other, rather than to the shirt neckband.

It is pertinent to note here that the patent does not require that the top stitching be located at any special point with reference to the collar and the tabs in order to produce the alleged novel function. If run stitching is used to attach

---

3. From pages 4 & 5 of Transcript—excerpt from opening statement of plaintiffs' counsel at beginning of trial:

"In any patent infringement suit, your Honor, the issue arises as to the state of the art. That is an expression that is used. And this means what was the —what was available before; what did this shirt take the place of and what is this shirt an improvement of. We believe we will establish during the trial that the only shirt on the market, through the years, before the advent of the shirt in issue—and including tabs on the collar wings—was the so-called English tab shirt; and that shirt, briefly, can be described as one having tabs affixed to the collar wings. And when the shirt is worn, the tabs are threaded at the other ends, over a collar button. The tabs instead of having snaps on the end have buttonholes and are affixed to the shirt body, or, specifically, to the neckband of the shirt, by threading them over the collar stud or button.

"THE COURT: Were those tabs attached to the English shirt in the same manner as your tabs are attached in this shirt?

"MR. MOBILLE: I think it will be shown at trial that the method of attaching the tabs to the collar wings had been utilitized prior to our shirt, yes, sir. That individual element, that method of attaching, was known. As a matter of fact, snaps were known—we will concede that, of course, and snaps were used on garments, including shirts—on cuffs, for example; and, furthermore, tabs, as such, were known for shirts—to collar wings. Our invention, we believe, is the combination of these elements to produce the Snap-Tab shirt. The answer to your question is, 'Yes, sir.'"

the tabs to the collar plies, prior to turning the collar, and top stitching is thereafter applied to the tabs, the alleged novel functioning of the snaps, tabs and top stitching is apparently unimpaired.

Plaintiff has failed to prove that the combination of having inelastic tabs with snaps, attached to a collar by aid of top stitching, produces any novel inventive function different from that of the earlier tab collars notoriously known to the art. The snap fastener serves its usual and intended function in the patented collar, and the presence of top stitched tabs does not in any manner react with or materially affect in any way the function of the snaps. The snaps on the patented collar serves the same purpose as the buttonholes and button on the earlier Tripler and Hathaway shirts. The tabs and the top stitching on the patented shirt serves the same function as they did on earlier tab shirts. The combination does not produce a single new, different, or additional function or operation. At most, plaintiff has only proved that its tab collar added neatness to its shirts, improved the appearance and wearability of the collar and tie, and gave greater comfort to the buyer of the shirt.

## CONCLUSIONS OF LAW AS TO VALIDITY OF PATENT

██ A patent is presumed to be valid and the burden of proof is upon one attempting to establish its invalidity.[4]

A combination of old elements may be patentable if they "perform, or produce a new, different or additional function or operation in the combination than that theretofore performed or produced by them".[5] The validity of plaintiff's combination patent depends upon whether the combination was obvious to one possessing ordinary skill in the art.

In Triumph Hosiery Mills, Inc. v. Alamance Industries, Inc., 299 F.2d 793

4. 35 U.S.C.A. § 282.

5. Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S.

[4th Cir. 1962], cert. den. 370 U.S. 924, 82 S.Ct. 1566, 8 L.Ed.2d 504, the patent in question was declared invalid, with the Court stating at page 800:

"[I]t achieved notable commercial success and has the sincere flattery of industrial imitation.

"But these contentions admitted, they do not establish patentability. *Noteworthy, the patentees do not pinpoint the inventiveness.* However significant and true, their assertions for the patent do not turn the old into the new, the obvious into the ingenious. [Emphasis added].

"Utility is mistaken in these arguments for novelty. Utility alone is not patentable. As said in McClain v. Ortmayer, 141 U.S. 419, 429, 12 S.Ct. 76, 79, 35 L.Ed. 800 [1891]: 'While * * * in a doubtful case the fact that a patented article had gone into general use is evidence of its utility, it is not conclusive even of that—, much less of its patentable novelty.' Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 356, 59 S.Ct. 897, 900, 83 L.Ed. 1334 [1939] declares that, ' * * * similarly without significance on the question of novelty is the fact that, as plaintiff claims, utility resulted and commercial success followed from what patentees did.' "

In Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, at page 152, 71 S.Ct. 127, at page 130, 95 L.Ed. 162 [1950], the United States Supreme Court said:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract

147, 71 S.Ct. 127, 95 L.Ed. 162 [1950]; Entron of Maryland, Inc., v. Jerrold Electronics Corp., 295 F.2d 670 [4th Cir. 1961].

80

from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

The subject shirt collar has enjoyed some commercial success and this factor together with the statutory presumption of validity could overcome doubts raised as to the validity of a patent in a close case. However, in instant case, I find that plaintiffs have failed to show any "inventiveness" in their patented snap tab collar, and that the combination of the known elements was obvious to one having ordinary skill in the art. Furthermore, the patent "[a]t the same time offends, by the breadth of its claims, the very plan and purpose of the patent law." [6] In this case, plaintiffs' patent seeks to cover the manufacture of any shirt collar embodying elements notoriously known to the shirt making industry for years, whether or not these elements are used in the manner intended by the patent claims, specifications and drawings. In essence, the shirt industry would be prohibited from utilizing snaps on inelastic tabs and top stitching techniques except after payment of a licensee tax regardless of the effect or lack of effect that one element may have on the other, even if they be not constructed as they are in the patented shirt collar.

As stated by the Fourth Circuit in Triumph Hosiery Mills, Inc. v. Alamance Industries, supra, 299 F.2d at page 801:

"This expanse of monopoly, with the *in terrorem* effect upon competitors already mentioned, does not 'promote the Progress of Science and useful Arts.' Art. I, Section 8 of the Constitution. We think the patent is violative of the purpose and plan of the Constitution and statutes, 35 U.S.C. § 100 et seq., in granting letters patent. The harm is defined and decried in Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438 [1883], Justice Bradley saying, 'To grant a single party a monopoly of every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences.' He goes on, 'It embarasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith.' "

I therefore find that the single claim of U. S. Patent No. 2,905,945 is invalid under the provisions of 35 U.S.C. § 103 because such differences that exist between the subject matter sought to be patented and the prior art would have been obvious to a person having ordinary skill in the art at the time the alleged invention was made by the patentee of U. S. Patent No. 2,905,945.

I further find that the single claim of U. S. Patent No. 2,905,945 is invalid under the provisions of 35 U.S.C. § 102 [b] because the invention claimed differs from prior construction only in immaterial limitations; and therefore, the invention, but for these immaterial limitations, was patented and described in patents which were printed and published in this and foreign countries more than one year prior to the date of the filing of the application which resulted in U. S. Patent No. 2,905,945.

II. *Infringement of Patent by Defendant*

Having concluded that the patent in question is invalid in its entirety, it is not necessary that the court decide the issue of alleged patent infringement by defendant; nevertheless, for purposes of

6. See Triumph Hosiery Mills, Inc. v. Alamance Industries, Inc., 299 F.2d 793 [4th Cir. 1962].

the record, I make the following findings of fact and conclusions of law with respect to such issue.

It has long been known in the manufacture of shirts to construct a so-called "stitch and turn" collar which usually incorporates four plies or layers of fabric initially superposed one upon the other, with one ply eventually serving as one outer face of the collar, another ply serving as the other outer face of the collar, and the remaining two plies serving as an interlining and stay for the collar.

Plaintiff Mabs, Inc., has manufactured such stitch and turn collars for many years; defendant likewise has manufactured stitch and turn collars; and there are numerous examples thereof in the prior art.

The Piedmont shirt incorporates a "stitch and turn" collar having "run stitched" tabs attached to the adjacent front edges of the collar and a snap fastener having male and female portions respectively carried by the free ends of said tabs. The tabs which are attached to the collar by the "run stitching" at the turned edges are also incidentally engaged by the "top stitching". The run stitching of the tabs is accomplished by initially sandwiching the raw ends of the tabs between the successive collar plies preliminary to the application of the run stitching and prior to turning of the collar. Thus, the run stitching not only attaches the several collar plies to each other, but in addition attaches the tabs to the collar. After turning of the collar about the run stitching to hide the raw edges of the collar plies and the adjacent raw ends of the tabs, the top stitching is applied in the usual fashion inwardly of the turned edges of the collar, with such top stitching not only going through the several plies of the collar but in addition [if the raw ends of the tabs are sufficiently long] also going through the tabs.

Thus, the Piedmont tabs are attached to the corresponding front edges of the collar by the run stitching which is intended to be the sole securing means to the turned edge portion of the collar.

The run stitching which attaches the tabs to the collar is outwardly of the top stitching. The presence or absence of the top stitching going through the ends of the tabs, if at all, is only incidental and not in any means necessary to the functions of the tabs. The top stitching in defendant's shirt collars is important only to the final decorative step in the manufacture of the stitch and turn collar. Insofar as the tabs are concerned the top stitching in the collars of defendant's shirts could be eliminated without materially affecting the attachment of the tabs to the collar.

I, therefore, find that the use of top stitching in defendant's product is not used in any exclusive or particular fashion to affect, and does not affect the tabs and the snap fasteners on the end of the tabs in any manner, and the defendant therefore has not infringed plaintiff's patent if such were determined to be a valid patent.

III. *Validity; and IV. Infringement of Trademark "SNAP–TAB"*

Plaintiff, Mabs, Inc., is the owner of Trademark Registration No. 709,660 registered on the Principal Register under the Trademark Act of 1946 for the trademark SNAP-TAB as applied to shirts. This plaintiff has charged defendant with infringement of said Trademark Registration No. 709,660 and defendant has prayed for cancellation by this court of said Trademark Registration.

During the period from May 2, 1960 to August 31, 1961 defendant Piedmont Shirt Company was licensed to use the patent in question and was also by inference granted permission to use the alleged trademark "Snap-Tab". After the termination of the license defendant discontinued use of the alleged trademark, and if there were any use by the defendant of the alleged trademark subsequent to termination of the license agreement, such use as proved by the evidence brought out in the trial of the case was minimal and would not justify the issuance of an injunction or an award of damages. I find that the term "Snap-Tab" is widely used by the shirt industry

and buying public to denote the product of a shirt having collar tabs with snaps on the ends of the tabs. As such it is a generic and descriptive term used regardless of the actual composition of the collar or of the manufacturer. It has been widely used by all licensees of plaintiff with little or non-effective control by plaintiff over the quality of the shirts to which it was being applied.

CONCLUSIONS OF LAW AS TO INFRINGEMENT AND VALIDITY of TRADEMARK "SNAP-TAB"

Defendant has not infringed U. S. Trademark Reg. No. 709,660 applied to the mark "Snap-Tab".

■■ Registration of a trademark is prima facie evidence of its validity, 15 U.S.C. § 1115 [a]. However, as stated in Flexitized, Inc. v. National Flexitized Corporation, 335 F.2d 774 [2nd Cir. 1964], cert. den. 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799:

"While registration of a trademark is prima facie evidence of its validity, 15 U.S.C. § 1115(a), this merely gives rise to a rebuttable presumption, and the mark's validity may be attacked in a collateral proceeding. E. g., Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); National Nu-Grape Co. v. Guest, 164 F.2d 874 (10 Cir. 1947). It has been long established that a trademark is not valid if the terms comprising it, as understood in their normal and natural sense by those to whom the marked product is sought to be marketed, are merely descriptive of the product, or its ingedients, qualities or characteristics, and, absent a showing that the trademark through use has acquired a secondary meaning, it will not be accorded protection."

7. See Feathercombs, Inc. v. Solo Products Corp., 2 Cir., 306 F.2d 251 cert. den.

In this case the principal significance of the term "Snap-Tab" is its indication of the nature of a shirt rather than of the origin of the shirt, and is therefore a generic or descriptive term relating to a general product; and in my judgment it has not acquired such a secondary meaning as to entitle plaintiff to be issued a trademark.

Plaintiffs have no trademark rights in the mark "Snap-Tab" which is a generic term and cannot function as a trademark. Defendant is free at all times to disregard any exclusive claim by plaintiffs to the mark "Snap-Tab".[7]

U. S. Trademark Reg. No. 709,660 is invalid, void and of no effect in law and should be cancelled in the U. S. Patent Office under the provisions of 15 U.S.C. § 1119.

V. *Award Of Attorneys Fees To Prevailing Party*

■ Only in an exceptional case is the prevailing party entitled to an award of attorney's fees. Berry Brothers Corporation v. Siemon, 317 F.2d 700 [4th Cir. 1963]; 35 U.S.C.A. § 285.

■■ The allowance of attorney fees to defendant, successful litigant in this action, is within the discretion of the District Court. However, " * * * the discretion should not be exercised except in situations involving vexatious and unjustified litigation on the part of the patentee." American Chain & Cable Co. v. Rochester Ropes, 199 F.2d 325 [4th Cir. 1952].

I fail to find in this case such exceptional circumstances as would justify an award of attorneys fees to defendant. Therefore, attorneys fees will not be awarded.

Plaintiffs will pay the taxable costs of this action.

It is so ordered.

371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170.