**ABERCROMBIE & FITCH COMPANY,**
Plaintiff-Appellant,

v.

**HUNTING WORLD, INCORPORATED,**
Defendant-Appellee.

No. 21, Docket 74–2540.

United States Court of Appeals,
Second Circuit.

Argued Sept. 18, 1975.

Decided Jan. 16, 1976.

Opinion on Limited Rehearing
Feb. 26, 1976.

Richard H. Wels, New York City (Moss, Wels & Marcus, New York City, of counsel), for defendant-appellee.

Roy C. Hopgood, New York City (Paul H. Blaustein, and Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City, of counsel), for plaintiff-appellant.

Before FRIENDLY, TIMBERS and GURFEIN, Circuit Judges.

FRIENDLY, Circuit Judge:

This action in the District Court for the Southern District of New York by Abercrombie & Fitch Company (A&F), owner of well-known stores at Madison Avenue and 45th Street in New York City and seven places in other states,[1] against Hunting World, Incorporated (HW), operator of a competing store on East 53rd Street, is for infringement of some of A&F's registered trademarks using the word 'Safari'. It has had a long and, for A&F, an unhappy history. On this appeal from a judgment which not only dismissed the complaint but canceled all of A&F's 'Safari' registrations, including several that were not in suit, we relieve A&F of some of its unhappiness but not of all.

I.

The complaint, filed in January, 1970, after describing the general nature of A&F's business, reflecting its motto "The Greatest Sporting Goods Store in the World," alleged as follows: For many years A&F has used the mark 'Safari' on articles "exclusively offered and sold by it." Since 1936 it has used the mark on a variety of men's and women's outer garments. Its United States trademark registrations include:

| Trademark | Number | Issued | Goods |
|---|---|---|---|
| Safari | 358,781 | 7/26/38 | Men's and Women's outer garments, including hats. |
| Safari Mills [2] | 125,531 | 5/20/19 | Cotton Piece goods. |
| Safari | 652,098 | 9/24/57 | Men's and Women's outer garments, including shoes. |
| Safari | 703,279 | 8/23/60 | Woven cloth, sporting goods, apparel, etc. |

A&F has spent large sums of money in advertising and promoting products identified with its mark 'Safari' and in policing its right in the mark, including the successful conduct of trademark infringement suits. HW, the complaint continued, has engaged in the retail marketing of sporting apparel including hats and shoes, some identified by use of 'Safari' alone or by expressions such as 'Minisafari' and 'Safariland'. Continuation of HW's acts would confuse and deceive the public and impair "the distinct and unique quality of the plaintiff's trademark." A&F sought an injunction against infringement and an accounting for damages and profits.

HW filed an answer and counterclaim. This alleged, *inter alia,* that "the word 'safari' is an ordinary, common, descriptive, geographic, and generic word" which "is commonly used and understood by the public to mean and refer to a journey or expedition, especially for hunting or exploring in East Africa, and to the hunters, guides, men, animals, and equipment forming such an expedition" and is not subject to exclusive appropriation as a trademark. HW sought cancellation of all of A&F's registrations using the word 'Safari' on the ground that A&F had fraudulently failed to disclose the true nature of the term to the Patent Office.

HW having moved for summary judgment, Judge Lasker granted this only in part, 327 F.Supp. 657 (S.D.N.Y.1971). He held, 327 F.Supp. at 662, that:

---

1. A&F also conducts a substantial mail order business.

2. The mark 'Safari Mills' was acquired by assignment from the original registrant, Robert Suffern.

8

Although "safari" is a generic word, a genuine issue of fact exists as to whether the plaintiff has created a secondary meaning in its use of the word "identifying the source" and showing that "purchasers are moved to buy it because of its source."

On the other hand, he concluded that A&F had no right to prevent HW from using the word 'Safari' to describe its business as distinguished from use in the sale of a particular product [3]—a conclusion we do not understand to be disputed; that HW had not infringed A&F's registered mark using the word 'Safari' under its brand name on a "classical safari hat" or in advertising this as "The Hat for Safari" since such use was purely descriptive, 327 F.Supp. at 664; that HW had also not infringed by using the term 'Minisafari' as a name for its narrower brimmed safari hats, and that HW was entitled to use the word 'Safariland' as the description of an area within its shop and as the name of a corporation engaged in the wholesale distribution of products imported from East Africa by an affiliate, Lee Expeditions, Ltd., and in the "Safariland News," a newsletter issued by HW and Lee Expeditions, 327 F.Supp. at 664–65. With respect to shoes he concluded that both parties had used the word 'Safari' in a fanciful rather than a descriptive sense and hence that plaintiff might have a valid infringement claim it it could establish a secondary meaning, 327 F.Supp. at 665.

On A&F's appeal this court reversed and remanded for trial, 461 F.2d 1040 (2 Cir. 1972). Most of Judge Thomsen's opinion for the court concerned the issue of appealability, as did most of Judge Timbers' concurring opinion and all of Judge Feinberg's dissent. Intimating no opinion on the ultimate merits, this court concluded "that genuine issues of fact exist which made it improper to enter a summary judgment finally denying even in part the injunctive relief sought by plaintiff." *Id.* at 1042.

Judge Ryan, before whom the action was tried on remand, ruled broadly in HW's favor. He found there was frequent use of the word 'Safari' in connection with wearing apparel, that A&F's policing efforts thus had evidently been unsuccessful, and that A&F had itself used the term in a descriptive sense not covered by its registration, e. g., in urging customers to make a "Christmas Gift Safari" to the A&F store. After referring to statements by Judge Lasker that 'Safari' was a "weak" mark, 327 F.Supp. at 663, the judge found the mark to be invalid. 'Safari,' the court held, "is merely descriptive and does not serve to distinguish plaintiff's goods as listed on the registration from anybody else's"; while such terms are afforded protection by the Lanham Act if they come to identify the company merchandising the product, rather than the product itself, A&F had failed to establish that this had become the situation with respect to 'Safari'.[4] The opinion did not discuss A&F's assertion that some of its marks had become incontestable under § 15 of the Lanham Act, 15 U.S.C. § 1065. The court entered a judgment which dismissed the complaint and canceled not only the four registered trademarks in suit but all A&F's other registered 'Safari' trademarks.[5] A&F has appealed.

---

**3.** He noted that HW had grown "from the operation of a company which actually organizes safaris and has common officers with that company," 327 F.Supp. at 663.

**4.** This finding—that A&F did not establish "secondary meaning" for its marks—is not here disputed.

**5.** There were, in addition to Nos. 358,781, 125,-531, 652,098, and 703,279, *supra,* also plaintiff's

New York Registration No. R–8008 (for 'Safari' applied to sporting goods apparel) and the following United States Registrations for 'Safari' not relied on by A&F in its complaint: 768,332 (luggage); 770,336 (portable grills); 777,180 (insulated ice chests); 779,394 (camping tents); 803,036 (axes); 856,889 (smoking tobacco).

The judgment also enjoined HW from using the letters 'T.M.' and 'R.' after the terms 'Minisafari Hat' and 'Safariland'—a ruling from which HW has not appealed.

## II.

It will be useful at the outset to restate some basic principles of trademark law, which, although they should be familiar, tend to become lost in a welter of adjectives.

■ The cases, and in some instances the Lanham Act, identify four different categories of terms with respect to trademark protection. Arrayed in an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded, these classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. The lines of demarcation, however, are not always bright. Moreover, the difficulties are compounded because a term that is in one category for a particular product may be in quite a different one for another,[6] because a term may shift from one category to another in light of differences in usage through time,[7] because a term may have one meaning to one group of users and a different one to others,[8] and because the same term may be put to different uses with respect to a single product.[9] In various ways, all of these complications are involved in the instant case.

■ A generic term is one that refers, or has come to be understood as referring, to the genus of which the particular product is a species. At common law neither those terms which were generic nor those which were merely descriptive could become valid trademarks, see *Delaware & Hudson Canal Co. v. Clark,* 80 U.S. (13 Wall.) 311, 323, 20 L.Ed. 581 (1872) ("Nor can a generic name, or a name merely descriptive of an article or its qualities, ingredients, or characteristics, be employed as a

trademark and the exclusive use of it be entitled to legal protection"). The same was true under the Trademark Act of 1905, *Standard Paint Co. v. Trinidad Asphalt Mfg. Co.,* 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536 (1911), except for marks which had been the subject of exclusive use for ten years prior to its enactment. 33 Stat. 726.[10] While, as we shall see, p. 10 infra, the Lanham Act makes an important exception with respect to those merely descriptive terms which have acquired secondary meaning, see § 2(f), 15 U.S.C. § 1052(f), it offers no such exception for generic marks. The Act provides for the cancellation of a registered mark if at any time it "becomes the common descriptive name of an article or substance," § 14(c). This means that even proof of secondary meaning, by virtue of which some "merely descriptive" marks may be registered, cannot transform a generic term into a subject for trademark. As explained in *J. Kohnstam, Ltd. v. Louis Marx and Company,* 280 F.2d 437, 440, 47 CCPA 1080 (1960), no matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name. See, accord, *Application of Preformed Line Products Co.,* 323 F.2d 1007, 51 CCPA 775 (1963); *Weiss Noodle Co. v. Golden Cracknel and Specialty Co.,* 290 F.2d 845, 48 CCPA 1004 (1961); *Application of Searle & Co.,* 360 F.2d 650, 53 CCPA 1192 (1966). We have recently had occasion to apply this doctrine of the impossibility of achieving trademark protection for a generic term, *CES Publishing Corp. v. St. Regis*

---

**6.** To take a familiar example "Ivory" would be generic when used to describe a product made from the tusks of elephants but arbitrary as applied to soap.

**7.** See, e. g., *Haughton Elevator Co. v. Seeberger,* 85 U.S.P.Q. 80 (1950), in which the coined word 'Escalator', originally fanciful, or at the very least suggestive, was held to have become generic.

**8.** See, e. g., *Bayer Co. v. United Drug Co.,* 272 F. 505 (S.D.N.Y.1921).

**9.** See 15 U.S.C. § 1115(b)(4).

**10.** Some protection to descriptive marks which had acquired a secondary meaning was given by the law of unfair competition. The Trademark Act of 1920 permitted registration of certain descriptive marks which had acquired secondary meaning, see *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.,* 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938).

*Publications, Inc.,* 531 F.2d 11 (1975). The pervasiveness of the principle is illustrated by a series of well known cases holding that when a suggestive or fanciful term has become generic as a result of a manufacturer's own advertising efforts, trademark protection will be denied save for those markets where the term still has not become generic and a secondary meaning has been shown to continue. *Bayer Co. v. United Drug Co.,* 272 F. 505 (2 Cir. 1921) (L. Hand, D. J.); *DuPont Cellophane Co. v. Waxed Products Co.,* 85 F.2d 75 (2 Cir.) (A. N. Hand, C. J.), *cert. denied,* 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936); *King-Seeley Thermos Co. v. Aladdin Industries, Inc.,* 321 F.2d 577 (2 Cir. 1963). A term may thus be generic in one market and descriptive or suggestive or fanciful in another.

The term which is descriptive but not generic [11] stands on a better basis. Although § 2(e) of the Lanham Act, 15 U.S.C. § 1052, forbids the registration of a mark which, when applied to the goods of the applicant, is "merely descriptive," § 2(f) removes a considerable part of the sting by providing that "except as expressly excluded in paragraphs (a)–(d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce" and that the Commissioner may accept, as prima facie evidence that the mark has become distinctive, proof of substantially exclusive and continuous use of the mark applied to the applicant's goods for five years preceding the application. As indicated in the cases cited in the discussion of the unregistrability of generic terms, "common descriptive name," as used in §§ 14(c) and 15(4), refers to generic terms applied to products and not to terms that are "merely descriptive."

In the former case any claim to an exclusive right must be denied since this in effect would confer a monopoly not only of the mark but of the product by rendering a competitor unable effectively to name what it was endeavoring to sell. In the latter case the law strikes the balance, with respect to registration, between the hardships to a competitor in hampering the use of an appropriate word and those to the owner who, having invested money and energy to endow a word with the good will adhering to his enterprise, would be deprived of the fruits of his efforts.

The category of "suggestive" marks was spawned by the felt need to accord protection to marks that were neither exactly descriptive on the one hand nor truly fanciful on the other—a need that was particularly acute because of the bar in the Trademark Act of 1905, 33 Stat. 724, 726, (with an exceedingly limited exception noted above) on the registration of merely descriptive marks regardless of proof of secondary meaning. See *Orange Crush Co. v. California Crushed Fruit Co.,* 54 U.S.App. D.C. 313, 297 F. 892 (1924). Having created the category the courts have had great difficulty in defining it. Judge Learned Hand made the not very helpful statement:

> It is quite impossible to get any rule out of the cases beyond this: That the validity of the mark ends where suggestion ends and description begins.

*Franklin Knitting Mills, Inc. v. Fashionit Sweater Mills, Inc.,* 297 F. 247, 248 (2 Cir. 1923), aff'd *per curiam,* 4 F.2d 1018 (2 Cir. 1925)—a statement amply confirmed by comparing the list of terms held suggestive with those held merely descriptive in 3 Callmann, Unfair Competition, Trademarks and

---

11. See, e. g., *W. E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656 (2 Cir. 1970). A commentator has illuminated the distinction with an example of the "Deep Bowl Spoon":

"Deep Bowl" identifies a significant characteristic of the article. It is "merely descriptive" of the goods, because it informs one that they are deep in the bowl portion . . . . It is not, however, "the common

descriptive name" of the article [since] the implement is not a deep bowl, it is a spoon . . . . "Spoon" is not merely descriptive of the article—it identifies the article—[and therefore] the term is generic.

Fletcher, Actual Confusion as to Incontestability of Descriptive Marks, 64 Trademark Rep. 252, 260 (1974). On the other hand, "Deep Bowl" would be generic as to a deep bowl.

Monopolies § 71.2 (3d ed.). Another court has observed, somewhat more usefully, that:

A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

*Stix Products, Inc. v. United Merchants & Manufacturers Inc.,* 295 F.Supp. 479, 488 (S.D.N.Y.1968)—a formulation deriving from *General Shoe Corp. v. Rosen,* 111 F.2d 95, 98 (4 Cir. 1940). Also useful is the approach taken by this court in *Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp.,* 259 F.2d 314 (2 Cir. 1958), that the reason for restricting the protection accorded descriptive terms, namely the undesirability of preventing an entrant from using a descriptive term for his product, is much less forceful when the trademark is a suggestive word since, as Judge Lumbard wrote, 259 F.2d at 317:

The English language has a wealth of synonyms and related words with which to describe the qualities which manufacturers may wish to claim for their products and the ingenuity of the public relations profession supplies new words and slogans as they are needed.

If a term is suggestive, it is entitled to registration without proof of secondary meaning. Moreover, as held in the *Season-All* case, the decision of the Patent Office to register a mark without requiring proof of secondary meaning affords a rebuttable presumption that the mark is suggestive or arbitrary or fanciful rather than merely descriptive.

■■■■ It need hardly be added that fanciful or arbitrary terms [12] enjoy all the rights accorded to suggestive terms as marks—without the need of debating whether the term is "merely descriptive" and with ease of establishing infringement.

In the light of these principles we must proceed to a decision of this case.

## III.

■■■■ We turn first to an analysis of A&F's trademarks to determine the scope of protection to which they are entitled. We have reached the following conclusions: (1) applied to specific types of clothing 'safari' has become a generic term and 'mini-safari' may be used for a smaller brim hat; (2) 'safari' has not, however, become a generic term for boots or shoes; it is either "suggestive" or "merely descriptive" and is a valid trademark even if "merely descriptive" since it has become incontestable under the Lanham Act; but (3) in light of the justified finding below that 'Camel Safari,' 'Hippo Safari' and 'Safari Chukka' were devoted by HW to a purely descriptive use on its boots, HW has a defense against a charge of infringement with respect to these on the basis of "fair use." We now discuss how we have reached these conclusions.

■■■ It is common ground that A&F could not apply 'Safari' as a trademark for an expedition into the African wilderness. This would be a clear example of the use of 'Safari' as a generic term. What is perhaps less obvious is that a word may have more than one generic use. The word 'Safari' has become part of a family of generic terms which, although deriving no doubt from the original use of the word and reminiscent of its milieu, have come to be understood not as having to do with hunting in Africa, but as terms within the language referring to contemporary American fashion apparel. These terms name the components of the safari outfit well-known to the clothing industry and its customers: the 'Safari hat', a broad flat-brimmed hat with

---

12. As terms of art, the distinctions between suggestive terms and fanciful or arbitrary terms may seem needlessly artificial. Of course, a common word may be used in a fanciful sense; indeed one might say that only a common word can be so used, since a coined word cannot first be put to a bizarre use.

Nevertheless, the term "fanciful", as a classifying concept, is usually applied to words invented solely for their use as trademarks. When the same legal consequences attach to a common word, i. e., when it is applied in an unfamiliar way, the use is called "arbitrary."

a single, large band; the 'Safari jacket', a belted bush jacket with patch pockets and a buttoned shoulder loop; when the jacket is accompanied by pants, the combination is called the 'Safari suit'. Typically these items are khaki-colored.

This outfit, and its components, were doubtless what Judge Ryan had in mind when he found that "the word 'safari' in connection with wearing apparel is widely used by the general public and people in the trade." The record abundantly supports the conclusion that many stores have advertised these items despite A&F's attempts to police its mark. In contrast, a search of the voluminous exhibits fails to disclose a single example of the use of 'Safari', by anyone other than A&F and HW, on merchandise for which A&F has registered 'Safari' except for the safari outfit and its components as described above.

■ What has been thus far established suffices to support the dismissal of the complaint with respect to many of the uses of 'Safari' by HW. Describing a publication as a "Safariland Newsletter", containing bulletins as to safari activity in Africa, was clearly a generic use which is nonenjoinable, see *CES Publishing Co. v. St. Regis Publications, Inc., supra.* A&F also was not entitled to an injunction against HW's use of the word in advertising goods of the kind included in the safari outfit as described above. And if HW may advertise a hat of the kind worn on safaris as a safari hat, it may also advertise a similar hat with a smaller brim as a minisafari. Although the issue may be somewhat closer, the principle against giving trademark protection to a generic term also sustains the denial of an injunction against HW's use of 'Safariland' as a name of a portion of its store devoted at least in part to the sale of clothing as to which the term 'Safari' has become generic.

■ A&F stands on stronger ground with respect to HW's use of 'Camel Safari', 'Hippo Safari' and Chukka 'Safari' as names for boots imported from Africa. As already indicated, there is no evidence that 'Safari' has become a generic term for boots. Since, as will appear, A&F's registration of 'Safari' for use on its shoes has become incontestable, it is immaterial (save for HW's contention of fraud which is later rejected) whether A&F's use of 'Safari' for boots was suggestive or "merely descriptive."

■ HW contends, however, that even if 'Safari' is a valid trademark for boots, it is entitled to the defense of "fair use" within § 33(b)(4) of the Lanham Act, 15 U.S.C. § 1115(b)(4). That section offers such a defense even as against marks that have become incontestable when the term charged to be an infringement is not used as a trademark "and is used fairly and in good faith only to describe to users the goods and services of such party, or their geographic origin."

■ Here, Lee Expeditions, Ltd., the parent company of HW, has been primarily engaged in arranging safaris to Africa since 1959; Robert Lee, the president of both companies, is the author of a book published in 1959 entitled "Safari Today—The Modern Safari Handbook" and has, since 1961, booked persons on safaris as well as purchased safari clothing in Africa for resale in America. These facts suffice to establish, absent a contrary showing, that defendant's use of 'Safari' with respect to boots was made in the context of hunting and traveling expeditions and not as an attempt to garner A&F's good will. The district court here found the HW's use of 'Camel Safari', 'Hippo Safari', and 'Safari Chukka' as names for various boots imported from Africa constituted "a purely descriptive use to apprise the public of the type of product by referring to its origin and use." The court properly followed the course sanctioned by this court in *Venetianaire Corp. of America v. A&P Import Co.,* 429 F.2d 1079, 1081–82 (1970), by focusing on the "*use* of words, not on their nature or meaning in the abstract" (emphasis in original). When a plaintiff has chosen a mark with some descriptive qualities, he cannot altogether exclude some kinds of competing uses even when the mark is properly on the register,

see 3 Callmann, *supra,* § 85.1; *Kiki Undies Corp. v. Alexander's Dep't Stores, Inc.,* 390 F.2d 604 (2 Cir. 1968); contrast *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.,* 411 F.2d 1097 (2 Cir. 1969), *cert. dismissed,* 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970). We do not have here a situation similar to those in *Venetianaire, supra,* and *Feathercombs, Inc. v. Solo Products Corp.,* 306 F.2d 251 (2 Cir. 1962), in both of which we rejected "fair use" defenses, wherein an assertedly descriptive use was found to have been in a trademark sense. It is significant that HW did not use 'Safari' alone on its shoes, as it would doubtless have done if confusion had been intended.

We thus hold that the district court was correct in dismissing the complaint.

## IV.

■ We find much greater difficulty in the court's broad invalidation of A&F's trademark registrations. Section 37 of the Lanham Act, 15 U.S.C. § 1119, provides authority for the court to cancel those registrations of any party to an action involving a registered mark.[13] The cases cited above, p. 13, establish that when a term becomes the generic name of the product to which it is applied, grounds for cancellation exist. The relevant registrations of that sort are Nos. 358,781 and 703,279. Although No. 358,751 dates back to July 20, 1938, and No. 703,279 was registered on August 23, 1960, and an affidavit under § 15(3), 15 U.S.C. § 1065(3), was filed on October 13, 1965, cancellation may be decreed at any time if the registered mark has become "the common descriptive name of

an article or substance," § 14(c), see also § 15(4), 15 U.S.C. §§ 1064(c) and 1065(4). The whole of Registration No. 358,781 thus was properly canceled. With respect to Registration No. 703,279 only a part has become generic[14] and cancellation on that ground should be correspondingly limited.[15] Such partial cancellation, specifically recognized by § 37, accords with the rationale by which a court is authorized to cancel a registration, viz, to "rectify" the register by conforming it to court judgments which often must be framed in something less than an all-or-nothing way.

■ There remain eight other registrations and those terms not pared from No. 703,279. Three of these registrations, Nos. 652,098, 768,332 and 770,336, and the non-generic portions of No. 703,279 appear to have become incontestable by virtue of the filing of affidavits under § 15(3), of five years continuous use.[16] There is nothing to suggest that the uses included in these registrations, except the uses described above with respect to 703,279 are the common descriptive names of either current fashion styles or African expeditions. The generic term for A&F's 'safari cloth Bermuda shorts', for example, is 'Bermuda shorts', not 'safari'; indeed one would suppose this garment to be almost ideally unsuited for the forest or the jungle and there is no evidence that it has entered into the family for which 'Safari' has become a generic adjective. The same analysis holds for luggage, portable grills, and the rest of the suburban paraphernalia, from swimtrunks and raincoats to belts and scarves, included in these registrations. HW alleged that these registrations were procured by fraud,

---

13. In contrast to the rule under the Trademark Act of 1905, see *Drittel v. Friedman,* 154 F.2d 653, 654 (2 Cir. 1946), § 37 of the Lanham Act permits cancellation on a counterclaim by a defendant who does not own a registered mark. See *Best & Co. v. Miller,* 167 F.2d 374, 376–77 (2 Cir. 1948).

14. To wit, pants, shirts, jackets, coats and hats.

15. Similar partial cancellation is the proper remedy with respect to the New York registration.

16. In limiting ourselves to these four registrations we are proceeding solely on the basis of the certified copies of trademark registrations filed as exhibits. Since HW's answer challenged incontestability only on the ground of fraud, A&F may not have been alerted to the desirability of informing the court of the filing of § 15(3) affidavits. In view of our holding that the other five registrations should not have been canceled, this is immaterial.

a claim which, if successful, would deny incontestability to A&F''s marks, see § 14(c), 15 U.S.C. § 1064(c). But these allegations seem to have meant no more than that HW believed the terms to be merely descriptive and hence unregistrable, and that the Patent Office must have been duped into registering them in the first place without proof of secondary meaning. However, we regard these terms as suggestive rather than "merely descriptive." Moreover, even if they were the latter, assuming that the person filing the applications made the required allegation that "no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive," see § 1(a)(1), 15 U.S.C. § 1051(a)(1), there is nothing to show that such statements were knowingly false when made. Cf. *Bart Schwartz Int'l Textiles, Ltd. v. F.T.C.*, 289 F.2d 665, 48 CCPA 933 (1961); *National Trailways Bus System v. Trailway Van Lines, Inc.*, 269 F.Supp. 352 (E.D.N.Y.1965). The scheme of the Lanham Act forbids a denial of incontestability to a "merely descriptive" mark which would otherwise have become incontestable under § 14 on the basis of a mere allegation of fraud in obtaining registration, without supporting proof.

█ We hold also that the registrations which have not become incontestable should not have been canceled. 'Safari' as applied to ice chests, axes, tents and smoking tobacco does not describe such items. Rather it is a way of conveying to affluent patrons of A&F a romantic notion of high style, coupled with an attractive foreign allusion. As such, these uses fit what was said many years ago in upholding 'Ideal' as a mark for hair brushes:

The word "Ideal" has no application to hair brushes, except as we arbitrarily apply it, and the word is in no sense indicative or descriptive of the qualities or characteristics or merits of the brush except that it meets the very highest ideal,

mental conception, of what a hair brush should be.

*Hughes v. Alfred H. Smith Co.*, 205 F. 302, 309 (S.D.N.Y.), aff'd. *per curiam,* 209 F. 37 (2 Cir. 1913). It is even wider of the mark to say that 'Safari Mills' "describes" cotton piece goods. Such uses fit into the category of suggestive marks. We need not now decide how valuable they may prove to be; it suffices here that they should not have been canceled.

█ In sum, we conclude that cancellation should have been directed only with respect to No. 358,781 and portions of No. 703,279 and the New York registration. With respect to the remaining registrations A&F will have the benefits accorded by § 7(b) that registration shall be "prima facie evidence of the validity of the registration . . . and of [the] registrant's exclusive right to use the mark in commerce," 15 U.S.C. § 1057(b). This means "not only that the burden of going forward is upon the contestant of the registration but that there is a strong presumption of validity so that the party claiming invalidity has the burden of proof [and] must put something more into the scales than the registrant." *Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp.*, 259 F.2d 314, 316 (2 Cir. 1958). In the case of registrations that have become incontestable A&F will have the further benefit accorded by § 33(a), 15 U.S.C. § 1115(a), subject to the limitations contained therein and in § 33(b), 15 U.S.C. § 1115(b). Whether all this will suffice for a victory will depend on the facts in each case.

So much of the judgment as dismissed the complaint is affirmed; so much of the judgment as directed cancellation of the registrations is affirmed in part and reversed in part, and the cause is remanded for the entry of a new judgment consistent with this opinion. No costs.

PER CURIAM:

*On Petition of Appellant for Rehearing*

By petition for rehearing plaintiff-appellant, Abercrombie & Fitch Company (A&F),

requested us to alter our opinion filed January 16, 1976, in two respects: one was that footnote 14, p. 13, describing the scope of cancellation of Trademark Registration No. 703,279, be modified by omitting the word "shirts". The other was that we should not uphold the "fair use" defense, pp. 13–14, as to Hippo Safari and Camel Safari shoes. We called upon defendant-appellee Hunting World, Inc. (HW) to answer.

We agree with A&F that footnote 14 was in error in indicating that Safari had become generic with respect to shirts. Since the mark has become incontestable, it is of no moment, on the issue of cancellation, that, as HW urges, the mark may now be "merely descriptive," pp. 12–13. HW's answer adduces nothing to show that Safari has become the "common descriptive name" for this type of shirt; indeed, HW admits never having advertised its own shirts as such. While HW asserts that "the record is clear that the upper garment of the safari suit is referred to interchangeably as a safari bush jacket and as a safari shirt," the cited pages do not bear this out.

On the other hand we see no force in A&F's criticisms of the portion of our opinion relating to the fair use defense with respect to Hippo Safari and Camel Safari shoes sufficient to lead us to change the views previously expressed or, indeed, to require further discussion.

The petition for rehearing is granted to the extent of striking the word "shirts" from fn. 14 on p. 13 and is otherwise denied.