Aida E. FRAGA, d/b/a OPEN
MRI, Plaintiff,

v.

SMITHAVEN MRI, a/k/a Open MRI at
Smithaven, a/k/a Open MRI and Garden
City MRI, a/k/a Open MRI at Garden
City, a/k/a Open MRI, Defendants.

No. CV 94–0030.

United States District Court,
E.D. New York.

Oct. 26, 1994.

Ober, Kaler, Grimes & Shriver, by Stephen E. Powers, New York City, for plaintiff.

Scoppetta & Seiff, by Walter A. Kretz, Jr., New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff in this matter, whose magnetic resonance imaging center does business as "OPEN MRI" or "DIAL OPEN–MRi," has asserted claims against defendants, who own similar centers with similar names, for trade name violations under Section 43(a) of the Lanham Act, codified as 15 U.S.C. § 1125(a), as well as claims arising under New York law. Presently before the Court are plaintiff's motion for a preliminary injunction against defendants' continued use of their business names and defendants' cross-motion for summary judgment to dismiss the complaint.

## I. BACKGROUND

For nearly a decade, physicians have used an internal picture-taking process called magnetic resonance imaging ("MRI") to help locate tumors, diagnose joint conditions, and examine other areas of the body hidden to the X-ray. Despite the MRI device's obvious utility, however, many patients shun MRI treatment because they consider the process unpleasant. The machine's structure—its thin bed tightly encased by a noisy cylindrical apparatus—is the source of discomfort, particularly for obese people and claustrophobes. To allay this hesitance, manufacturers designed a new, less constrictive MRI device that is open on four sides. This new machine, and what it is called, is the subject matter of this dispute.

In August 1991, plaintiff Aida E. Fraga, M.D. decided to open an MRI center. In January 1992, she leased space in a shopping mall in Centereach, New York and placed a sign above the door which read "DIAL OPEN–MRi." She purchased one of the new, less constrictive MRI devices and opened for business on August 3, 1992. Both she and the machine's manufacturer, Toshiba, call the device an "Access LPT." According to plaintiff, the term "OPEN MRI" is not an industry term, but rather a name that *she* "coined" for *her* business. Affidavit of Aida E. Fraga ("Fraga Aff.") ¶ 4 (emphasis added). She states that she filed a Certificate of Assumed Name for "OPEN MRI" in Suffolk County, New York in July 1992. *Id.* ¶ 24. Plaintiff's business name has not been registered by the Patent and Trademark Office of the United States Department of Commerce ("Trademark Office").

The defendants are two corporations which have done business under several names. Defendants were incorporated as Belle Meade MRI Imaging Corp. ("Smithaven defendant") and 1101 Imaging Corp. ("Garden City defendant"). Subsequently, the Smithaven defendant used the business name "Smithaven MRI" and the Garden City defendant used the name "Garden City MRI." The defendants currently refer to themselves as "OPEN MRI (Smithaven)" and "OPEN MRI (Garden City)" and advertise themselves as "OPEN MRI at Smithaven" and "OPEN MRI at Garden City," respectively. At what point in time defendants adopted these names is unclear, but the Smithaven defendant used "Smithaven Open MRI" in a radio advertising sales contract dated January 31, 1992, *see* Affidavit of Michael Griffin ("Griffin Aff.") ¶ 7, exh. 5, and the Garden City defendant filed a Certificate of Assumed Name for "OPEN MRI" with the New York State Secretary of State on February 19,

1992, *id.* ¶ 2, exh. 2.[1] Like plaintiff, each defendant provides MRI service in Long Island, New York, each owns a Toshiba Access LPT, and each currently use the term "OPEN MRI" in its business name. Defendants' business names have not been registered by the Trademark Office.

Plaintiff claims, *inter alia,* that consumers have come to associate the term "OPEN MRI" with her MRI center, and that she is losing business to defendants because they have used her name. To show the extent to which she has infused her trade name into the market, plaintiff alleges the following:

● After signing the lease in January 1992, plaintiff undertook a "massive mailing of letters to inform people of the opening of [her] center and its name." Fraga Aff. ¶ 18.

● Plaintiff "began taking people out to lunch and telling them about 'OPEN MRI.'" *Id.* ¶ 19.

● In April 1992, plaintiff listed the center's telephone number in the white pages telephone directory as "516–OPEN–MRI." *Id.* ¶ 20.

● Plaintiff has published brochures, note pads, and newsletters that refer to the center as "DIAL (516) OPEN–MRi." *Id.* ¶ 21, exh. 6.

● Since July 1992, plaintiff used the name "OPEN MRI" in newspaper, radio, and television advertisements. *Id.* ¶ 25.

● Plaintiff has spent more than $280,000 marketing the name "OPEN MRI." *Id.* ¶ 26.

To show that defendants fed off her good will and deprived her of customers, plaintiff alleges that the public became confused after defendants began using "OPEN MRI" in their business names in "late" 1992. *Id.* ¶ 33. Plaintiff explains that physicians who had referred patients to her in the past inquired as to whether she had opened a new "OPEN MRI" center. *Id.* ¶ 38. She indicates that one patient who sought the address of her center from directory assistance, was instead given a defendant's address and, as a result, mistakenly went to that defendant's center rather than hers. *Id.* ¶ 41. Plaintiff states

that she placed 20 telephone calls to directory assistance seeking the telephone number of her center, but was given that of a defendant more than half the time. *Id.* ¶ 40.

Plaintiff commenced this action in January 1994 by filing a complaint with order to show cause seeking a temporary restraining order and preliminary injunction. The request for a temporary injunction was denied after oral argument by Judge Hurley of this Court, in Judge Wexler's absence.

## II. *DISCUSSION*

■ In order to obtain a preliminary injunction in the Second Circuit, the moving party must show (1) that it will suffer irreparable injury should relief be deferred until the end of the case, and (2) either (a) a likelihood that it will succeed on the merits of the action, or (b) a sufficiently serious question going to the merits combined with a balance of the hardships tipped decidedly in favor of the moving party. *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1038 (2d Cir.1992) (citing *Jackson Dairy v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam)). Plaintiff puts forth two underlying claims: (1) that defendants' use of the name "OPEN MRI" constitutes a false designation of origin and as such is a violation of Section 43(a) of the Lanham Act and (2) that defendants' use of the name "OPEN MRI" is a violation of the New York law of unfair competition.

### A. *The Federal Claim*

■ In order to prevail on a federal false designation of origin claim, the movant must make an initial showing that its mark or name warrants protection under the Lanham Act. *See Western Publishing Co. v. Rose Art Indus.,* 910 F.2d 57, 59 (2d Cir. 1990). Where protection is available, the movant can typically establish the requisite potential for harm—as well as the requisite likelihood of success on the merits—by demonstrating that a significant number of consumers are likely to be misled as to the source of the product or service in question.

---

**1.** The Smithaven defendant also filed a Certificate of Assumed name for "OPEN MRI," with the New York State Secretary of State on August 6, 1992. Griffin Aff. ¶ 3, exh. 4.

*See Bristol–Myers,* 973 F.2d at 1038. The Court, therefore, must first address whether plaintiff's trade name is eligible for protection under the Lanham Act.

■■■ Section 43(a) of the Lanham Act prohibits any person from using

in connection with any goods or services ... any word, term, name, symbol, or device, or any combination thereof ... which is likely to cause confusion, or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of his or her goods ... by another person.

15 U.S.C. § 1125(a). This section provides protection for registered as well as unregistered trademarks and trade names. *Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992); *Western Publishing Co.,* 910 F.2d at 59. Not all unregistered marks and names, however, qualify for protection; only those unregistered marks that are sufficiently distinctive to link a product or a service to its source are eligible. *See Abercrombie & Fitch Co. v. Hunting World,* 537 F.2d 4, 9 (2d Cir.1976); *see also Thompson Medical Co. v. Pfizer Inc.,* 753 F.2d 208, 215–16 (2d Cir.1985).

To aid in determining eligibility, the Second Circuit, in *Abercrombie & Fitch,* undertook a demarcation of the spectrum of distinctiveness for any given mark or name. "Arrayed in an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded, [the] classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Abercrombie & Fitch,* 537 F.2d at 9.

■■■ A generic term, "one that refers, or has come to be understood as referring, to the genus of which the particular product is a species," is accorded no protection. *Id.* In such a case, "no amount of money poured into promoting customers' association of generic terms with a particular source can justify 'depriv[ing] competing manufacturers of the product of the right to call an article by its name.'" *PaperCutter, Inc. v. Fay's Drug. Co.,* 900 F.2d 558, 562 (2d Cir.1990) (quoting *Abercrombie & Fitch,* 537 F.2d at 9).

■ Descriptive terms "naturally and normally direct attention to the qualities, ingredients, appearance, effect, purpose, or other features of the goods or services." 3 Rudolf Callmann, *The Law of Unfair Competition, Trademarks and Monopolies* § 18.04 (1983). These terms are not eligible for protection unless they have acquired "secondary meaning." *Abercrombie & Fitch,* 537 F.2d at 9–10. A descriptive mark or name has acquired secondary meaning where consumers "associate it with a certain producer, and [are] likely to make that same association when an identical mark (or a confusingly similar mark), is used on another producer's product." *Thompson Medical,* 753 F.2d at 215–16.

■■ A mark or name in one of the remaining classes—suggestive, and arbitrary or fanciful—links the product or service with its source by its very nature—or, primary meaning—and as such is always eligible for protection; secondary meaning need not have been acquired. *See Bristol–Myers,* 973 F.2d at 1039.

Plaintiff does not claim that her business name falls into one of these latter categories; she argues that her name is descriptive and that it has acquired secondary meaning. Defendants argue that plaintiff's name is generic, or, in the alternative, descriptive without secondary meaning.

■■ A generic term identifies a class of goods or services without specifying a particular producer. *See* Callmann § 18.03. Descriptive terms identify a subdivision of a class, still without identifying its producer. *Id.* Thus, "automobile" is generic; "blue automobile" is descriptive. *Id.* Over time, however, it is possible for a subdivision to become a class of goods or services unto itself. *See, e.g., Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 81 (7th Cir.1977) (holding that "lite beer" or "light beer" were generic terms). In the instant case, the generic term for the service that plaintiff provides is "MRI." The term plaintiff has chosen for her business, "OPEN MRI," merely identifies a subdivision of MRI service—*i.e.,* MRI in an open chamber. As such, the term is at best descriptive. The term may in fact be a generic one, *see id.* at

81, but the Court need not address that issue at this time because, for the reasons below, plaintiff's name is not entitled to protection even if it is descriptive.

 Assuming, *arguendo,* that "OPEN MRI" is descriptive, protection is nevertheless unavailable under the Lanham Act unless plaintiff proves that her mark or name acquired secondary meaning. *Abercrombie & Fitch,* 537 F.2d at 9–10. Proof of secondary meaning is a vigorous evidentiary requirement. *Thompson Medical,* 753 F.2d at 217. Plaintiff must show that consumers had already come to identify the name "OPEN MRI" with her center when defendants began using the term in their business names. *See id.* (citing *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1043 (2d Cir.1980)). In assessing plaintiff's proof, the Court must consider the following factors: (1) advertising expenditures; (2) consumer studies linking the mark or name to its source; (3) sales success; (4) unsolicited media coverage of the product or service; (5) attempts to plagiarize the mark or name; and (6) length and exclusivity of the use of the mark or name. *See id.* (citations omitted); *see also Bristol–Myers,* 973 F.2d at 1043 (identifying the *Thompson Medical* factors as proper criteria for measuring the extent to which a given term has acquired secondary meaning).

 Plaintiff has not provided the Court with consumer studies or any proof regarding sales success; there is no indication that her center has received any unsolicited media coverage. Plaintiff used the term "OPEN MRI" for a short time prior to defendants' use—less than one year according to her affidavit, *see* Fraga Aff., ¶¶ 15–16, 33. Plaintiff nonetheless claims that her use of the term was exclusive and intensive during that period, alleging that she spent over $280,000 on advertising. Although the Court considers this a relatively large amount, the fact that plaintiff infused the market with several names—"OPEN MRI," "DIAL–OPEN–MRi," "516–OPEN MRI," and "DIAL (516) OPEN–MRi"—decreases the likelihood that any one name acquired secondary meaning. Plaintiff also alleges that defendants plagiarized her name. Assessing these factors, the

Court is not convinced, at this juncture, that plaintiff's name acquired secondary meaning. As such, even if plaintiff's name was considered descriptive, it would not be entitled to protection under the Lanham Act. Because plaintiff's name is not deserving of protection, the Court need not address whether there is a likelihood that consumers will confuse defendants' business with plaintiff's.

For the reasons above, plaintiff has neither shown that she is likely to succeed on the merits of her federal claim, nor that there is a sufficiently serious question going to the merits combined with a balance of the hardships tipped decidedly in her favor. Plaintiff, therefore, is not entitled to a preliminary injunction based on her federal claim.

### B. The State Claim

 Plaintiff also asserts an unfair competition claim based on New York State common law. In order to prevail on such a claim, plaintiff must demonstrate a likelihood that consumers confused its product or service with that of defendants. *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 169 (2d Cir.1991). A showing of secondary meaning is not necessary to prove unfair competition under New York law. *Id.*

 In assessing whether a likelihood of confusion exists, the Court must consider, for the purpose of a Lanham Act claim, the factors set forth in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1043 (2d Cir.1992). The *Polaroid* factors may also be used to measure likelihood of confusion for the purpose of a New York unfair competition claim. *See id.* at 1048. The factors are: (1) strength of the plaintiff's mark or name; (2) degree of similarity between the two marks or names; (3) competitive proximity of the two products or services; (4) likelihood that the plaintiff will "bridge the gap"; (5) evidence of actual confusion; (6) defendant's good faith; (7) quality of defendant's product or service; and (8) sophistication of the purchasers. *Polaroid,* 287 F.2d at 495.

The first factor measures the " 'distinctiveness of [plaintiff's] mark, or more precisely, its tendency to identify the goods' as coming from a particular source." *Lang v. Retirement Living Publishing Co.*, 949 F.2d 576, 581 (2d Cir.1991) (quoting *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979)). Plaintiff's trade name is decidedly weak in terms of distinctiveness, as measured above by the *Abercrombie & Fitch* standard, and, as a result, the first factor weighs heavily in favor of defendants.

The second factor examines whether a similarity between the marks or names is likely to cause consumer confusion. *Id.* In the *Lang* case, the Second Circuit concluded that the similarity between "New Choices For The Best Years" and "New Choices Press" was not likely to cause confusion because the words common to the two names were accompanied by other words that were not common to both names. Plaintiff has used the names "OPEN MRI," "DIAL–OPEN–MRi," "516–OPEN MRI," and "DIAL (516) OPEN–MRi," whereas defendants have used "OPEN MRI (Smithaven)," "Smithaven MRI," "OPEN MRI at Smithaven," "OPEN MRI (Garden City)," and "OPEN MRI at Garden City." Like the duplicate use of the term "New Choices" in *Lang,* the use of the term "OPEN MRI" by the parties in the instant action is not the type of similarity that is likely to cause consumer confusion because the term is almost always accompanied by other words. The second factor also favors defendants.

The third factor focuses on whether the products or services compete with each other. *Id.* at 582. The parties are in direct competition with each other because they offer the same service in virtually the same market. The third factor clearly favors plaintiff. As a result, it is unnecessary to address the fourth factor, which is relevant only where the parties are not in immediate competition.

The fifth and sixth factors measure whether there has been any actual confusion, and whether defendant deliberately copied plaintiff's mark or name so as to capitalize on plaintiff's good will. *See id.* at 582–83. As to the fifth factor, plaintiff alleges that physi-

cians and one patient were actually confused. As to the sixth factor, plaintiff asks the Court to infer that defendants intentionally copied her trade name based on little more than the allegation that defendants used the term "OPEN MRI" after plaintiff used it. At this stage, the Court is not necessarily persuaded that plaintiff was first to infuse her trade name into the market, much less that defendants copied her. The evidence, as presented by plaintiff thus far, is insufficient to tip the scale in favor of plaintiff on either the fifth or sixth factor. Similarly, because neither party has presented any evidence relating to the seventh or eighth factors, the Court cannot at this time undertake a complete analysis of the *Polaroid* factors.

In light of the weakness of plaintiff's mark, and the insufficiency of proof on the fifth, sixth, seventh, and eighth factors, the Court is not convinced, at this juncture, that consumers are likely to confuse defendants' service with plaintiff's. Plaintiff, therefore, is not likely to prevail on her unfair competition claim. Because, in addition, plaintiff has neither shown a sufficiently serious question going to the merits of that claim, nor a balance of the hardships tipped decidedly in her favor, she is not entitled to a preliminary injunction based on her state claim.

### C. The Cross–Motion for Summary Judgment

Defendant has cross-moved for summary judgment. Although plaintiff's case is not a strong one, the Court feels that defendant's motion is premature. Plaintiff may bolster certain aspects of her case—*i.e.*, secondary meaning and likelihood of confusion—through discovery.

In addition, defendants' cross-motion is not properly before the Court as leave to file the motion was never granted by the Court or even requested by defendants pursuant to Rule 5 of Judge Wexler's Rules on Motion Practice.

### III. CONCLUSION

For the above reasons, plaintiff's motion seeking preliminary relief is denied, and defendants' cross-motion for summary judg-

**114**

ment is denied without prejudice to defendant's right to renew following sufficient discovery.

SO ORDERED.