WE MEDIA, INC., Plaintiff–Appellant,

v.

CABLEVISION SYSTEMS CORP., Rainbow Media Holdings, Inc., American Movie Classics Co., We: Women's Entertainment, LLC, Defendants–Appellees,

General Electric Co., National Broadcasting Company, Inc., Defendants.

No. 02–9096.

United States Court of Appeals, Second Circuit.

April 13, 2004.

Arthur M. Lieberman (Keith D. Nowak, Dawn Rudenko, on the brief), Lieberman & Nowak, LLP, New York, NY, for Plaintiff–Appellant.

James W. Dabney (Jonathan E. Moskin, Jacqueline M. Lesser, Melanie Bradley, on the brief), Pennie & Edmonds LLP, New York, NY, for Defendants–Appellees.

Present: POOLER, SACK, and WESLEY, Circuit Judges.

SUMMARY ORDER

WE Media, Inc. ("WEM"), appeals from a judgment granting defendants' motion for summary judgment and dismissing WEM's complaint with prejudice. WEM's complaint asserted four causes of action: trademark infringement pursuant to 15 U.S.C. §§ 1114–18, trade name infringement pursuant to 15 U.S.C. § 1125(a), trademark dilution pursuant to 15 U.S.C. § 1125(c), and unfair competition pursuant to New York common law. WEM appeals this dismissal.

Familiarity is assumed as to the facts, the procedural context, and the specifications of appellate issues. Generally, WEM claims that the defendants infringed on its intellectual property rights by creating and marketing the WE: Women's Entertainment ("WWE") cable television channel.

This Court reviews a district court's summary judgment determination de novo. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir.1999). However, when we review a Lanham Act case, "the district court's findings with regard to each of the Polaroid factors are entitled to considerable deference, even on appeals from summary judgment." Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 215 (2d Cir.2003) (internal quotes and citations removed). Nevertheless, even under these circumstances, "[i]f a factual inference must be drawn to arrive at a particular finding on a Polaroid factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." Id. Finally, "we are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987) (internal citations omitted).

*I. Injunctive Relief*

Plaintiff argues that in deciding whether they could pursue a claim for injunctive relief, the district court erred in its likelihood of confusion analysis. "To prevail on a claim of trademark infringement, a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 2004 WL 354325, at *3 (2d Cir. Feb.26, 2004). To evaluate the likelihood of consumer confusion, we apply the multi-factor test set forth by Judge Friendly in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961). No single factor is dispositive, nor is a court limited to consideration of only these factors. *Polaroid*, 287 F.2d at 495. Plaintiff challenges the district court's conclusions on each of the *Polaroid* factors and the district court's final weighing of the *Polaroid* factors.

Strength of the Mark

WEM questions the district court's finding that its mark was weakened because of 1) lack of usage or presence in the television market; 2) insufficient evidence of defendants' willful infringement; and 3) evidence of third-party usage of similar marks in unrelated markets. [Blue at 21] However, WEM does not challenge the district court's determination that their mark is suggestive.

■ There are two components of a mark's strength: its inherent distinctiveness and the distinctiveness it has acquired in the marketplace. *See Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743–44 (2d Cir.1998). "Courts assess inherent distinctiveness by classifying a mark in one of four categories arranged in increasing order of inherent distinctiveness: (a) generic, (b) descriptive, (c) suggestive, or (d) fanciful or arbitrary." *Brennan's*, 360

F.3d 125, 130. Here, the district court found that the mark was suggestive, meaning it "fall[s] in an in-between category." *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir.1976). Suggestive marks are more distinctive than descriptive marks, and thus are accorded trademark rights without need to demonstrate that consumers have come to associate them with the user of the mark. *See id.* at 11. Nonetheless, because they seek to suggest qualities of the product, they possess a low level of distinctiveness and are given less protection than is reserved for more distinctive marks—those that are "arbitrary" or "fanciful." *See id.* In addition, recent caselaw has established that a suggestive mark with little acquired distinctiveness may be entitled to limited protection, but that it is not especially strong. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 147–48 (2d Cir.2003). Furthermore, while we acknowledge that there were flaws in the district court's reasoning, we agree with the district court's finding that WEM's mark holds virtually no acquired distinctiveness. Because WEM's mark is suggestive and carries little acquired distinctiveness, we agree with the district court's ultimate conclusion that the mark is relatively weak. *See Alfaro Motors*, 814 F.2d at 887.

Proximity of the Products in the Marketplace

The district court found that although "there is some overlap between the two parties' products markets ... the overlap is too slight for the Court to conclude that the parties directly compete at this time." *WE Media, Inc. v. Gen. Elec. Co.*, 218 F.Supp.2d 463, 477 (S.D.N.Y.2002). We find no error in this conclusion.

Bridging the Gap

In determining that this factor only slightly favored plaintiffs, the district court

did not mention WEM's talks with Hearst regarding a niche cable network targeted towards those with disabilities. *Id.* at 478. The district court erred in failing to consider this information. However, the affidavit that supports this assertion does not establish that WEM had anything more than a vague hope of entering the cable television market. That hope was dashed during the time period that the WWE channel was launched, but not as a result of WWE's television efforts. Thus, we find it to be a close call, but conclude that the district court did not err in finding that this factor "tends more toward [ ] finding a possibility of confusion, than against." *Id.* at 478.

Actual Confusion

The district court found that "WEM's strongest evidence purporting to show actual confusion would be Sorensen's Report concluding that one-third of his respondents believed WWE and WEM to be affiliated." *Id.* However, the district court found that flaws in methodology meant that the Report carried little probative weight. *Id.* We agree with this conclusion. The district court also declined to infer the possibility of confusion from the United States Patent and Trademark Office's refusal to register WWE's mark. Therefore, the district court concluded that this element did not support WEM.

■ In reaching this conclusion, the district court failed to mention the Shepard and McGill declarations, which described their own confusion and the confusion of numerous other parties who had contacted them. Nor did the court discuss the additional evidence of e-mails and voice messages received by WEM which indicated that those leaving the messages were confused as to the relationship between the parties. Nevertheless, in addressing monetary relief, the district court did consider the Shepard declaration and concluded

that "[t]he number of confused persons, as such, appears to be negligible." *Id.* at 474. We agree with this determination and find that the district court did not err in finding that the anecdotal evidence of confused callers is insufficient to support a finding of actual confusion. *Nora Beverages Inc. v. Perrier Group of Amer., Inc.,* 269 F.3d 114, 123–24 (2d Cir.2001) ("Although anecdotal evidence is admissible to establish actual consumer confusion, it is within a district court's broad discretion to rule upon the admissibility of those anecdotes. Generally, these principles do not change on a motion for summary judgment.") (citations omitted). Thus, we conclude that the district court did not err in finding that this factor did not support a finding of likelihood of confusion. *WE Media,* 218 F.Supp.2d at 478.

Bad Faith Infringement

The district court held that WEM's complaint did not make sufficient allegations to support a finding of bad faith. *Id.* at 474–76, 478. We agree with this determination of the district court.

Quality of Products

We find no error in the district court's treatment of this factor.

Consumer Sophistication

The district court found that WWE's "targeted viewers are sophisticated in the sense that (1) the women have college educations and (2) have purchased WWE as part of a television package which charges a significant monthly fee." *Id.* at 479. The court also found that WEM's consumers were sophisticated in the sense of seeking niche products. It concluded that this sophistication does not tend to show a likelihood of confusion. We find no error with this conclusion.

Balancing

In balancing the *Polaroid* factors we must focus on the ultimate issue of whether consumers are likely to be confused, rather than on a numerical breakdown of the factors. *See Paddington Corp. v. Attiki Importers & Distribs., Inc.,* 996 F.2d 577, 584 (2d Cir.1993). Here, the marks are quite similar and WEM has taken some steps and expressed a desire to bridge the gap. However, the mark is not particularly strong, the product markets are not proximate (although both parties act in media markets), there have been but a negligible number of instances of actual confusion, and the consumers are relatively sophisticated. Furthermore, the other two factors, bad faith and quality of the products, do not have much influence here. Finally, defendants make a convincing argument that injunctive relief would cause them to incur great injury. *See Vitarroz Corp. v. Borden, Inc.,* 644 F.2d 960, 969 (2d Cir.1981). Weighing these factors leads us to agree with the district court's conclusion that "[e]ven if a few of the individual *Polaroid* factors tend to show that confusion is possible, none show that it is probable." *WE Media,* 218 F.Supp.2d at 479. We therefore affirm the district court's dismissal of the claims for injunctive relief.

## II. Monetary Relief

Plaintiffs also challenge the district court's conclusion that they fail in their claims for monetary relief. WEM did not submit sufficient evidence to establish actual consumer confusion or intentional deception. *See Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,* 145 F.3d 481, 493 (2d Cir.1998); *G.H. Mumm Champagne v. Eastern Wine Corp.,* 142 F.2d 499, 501 (2d Cir.1944) ("[T]o recover damages or profits, whether for infringement of a trade-mark or for unfair compe-

tition, it is necessary to show that buyers, who wished to buy the plaintiff's goods, have been actually misled into buying the defendant's."). We therefore affirm the district court's dismissal of the claims for monetary relief.

We have reviewed the remaining arguments raised on appeal and find them to be without merit. For the foregoing reasons, we AFFIRM the judgment of the district court.